660 F.2d 111
 Virginia Ann AVERY, Appellant,
v.
COUNTY OF BURKE; Burke County Board of Health; Burke County
Board of Social Services, Appellees.
and
Biomedical Reference Laboratories, Incorporated; C. W.
Ellison, M.D.; C. W. Ellison, M.D., individually and in his
professional relationship with Burke County Board of Health;
James A. Blakely, individually and as Burke County Health
Director, and Burke County Director of Social Services; C.
J. Dellinger, M.D.; Donald Lambeth; Alfred Lytle; Gilmer
Lowman; Callie Gregory; Clifford Stamper, D.D.S.; Mrs. Jane
Gibson; Al Summers; and Gail Gay, individually and as
members of Burke County Board of Health; George Squillario;
Laura O'Neil; Bettie Hooks; E. R. Vaught; Major Buff,
individually and as members of Burke County Board of Social
Services; Linda K. York; Raye Faulkner, individually and as
employees of Burke County Board of Health; Gail Moore,
individually and as employee of Burke County Board of Social
Services, Defendants.
 No. 80-1691.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1981.
Decided Oct. 2, 1981.
 
 Louis E. Vinay, Jr., James Reid Simpson, II, Morganton, N. C. (Dan R. Simpson, Simpson, Aycock, Beyer & Simpson, P. A., Morganton, N. C., on brief), for appellant.
 Thomas Gene Smith, Valdese, N. C. (W. Harold Mitchell, Mitchell, Teele, Blackwell & Mitchell, Valdese, N. C., on brief) for appellees.
 Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and RICHARD C. ERWIN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 BUTZNER, Circuit Judge:
 
 
 1
 Virginia Avery appeals a summary judgment dismissing the County of Burke, North Carolina, its Board of Health, and its Board of Social Services from her suit brought under 42 U.S.C. § 1983.[1] Avery maintains that the county, the boards, and several individuals wrongfully caused her sterilization after informing her that she had sickle cell trait. We believe that there remain genuine issues of material fact concerning the appellees' liability. Accordingly, we vacate the entry of summary judgment and remand the case with directions that the complaint against the appellees be tried along with the claims against the other defendants.
 
 
 2
 * The facts, viewed in the light most favorable to the appellant, show that Avery became pregnant at the age of 15. She sought pre-natal care at a clinic operated by the Burke County Health Department, an agency of the Board of Health. Following a blood test, nurses at the clinic told Avery that she had sickle cell trait. This is the carrier gene state of sickle cell syndrome which exclusively affects black people.
 
 
 3
 The nurses urged her to consider sterilization. They told Avery and her mother that because Avery had sickle cell trait, childbirth would either immediately endanger her life or take two or three years off of her life. They cautioned that a woman with sickle cell trait is unable to take birth control pills. One nurse subsequently told Avery and her mother that it would be to their advantage to sign the sterilization consent form. A doctor associated with the clinic also recommended sterilization after warning that pregnant women with sickle cell trait are more susceptible to numerous diseases. Based on these representations, Avery and her mother consented to the sterilization.
 
 
 4
 A social worker trainee of the Burke County Department of Social Services, an agency of the Board of Social Services, was assigned to assist the Averys. She accompanied them to state court where, based upon the clinic doctor's recommendation, the sterilization was authorized pursuant to N.C.Gen.Stat. § 90-272. After she was sterilized, she discovered through subsequent testing that she did not have sickle cell trait.
 
 
 5
 Avery brought this suit under 42 U.S.C. § 1983 against the Health Department nurses, the doctor associated with the clinic, the social worker trainee, the county and its two boards, and the individual members and director of the boards for deprivation of her rights of privacy and procreation in violation of the fourteenth amendment. She contends that she was wrongfully sterilized because she did not have sickle cell trait and because sterilization is not medically recommended or proper, even when there has been a correct diagnosis of the trait. She consented to the sterilization, Avery maintains, solely because of the misrepresentations and exhortations of individuals associated with or employed by the boards.
 
 
 6
 Following extensive discovery, the defendants moved for summary judgment. The district court found that the evidence was insufficient "to establish any policy, practice, pattern, custom, deliberate indifference or tacit authorization of the offensive acts on the part of the County or the Boards and their members sufficient to constitute liability under 42 U.S.C.A. § 1983." Consequently, it concluded that there was no genuine issue of material fact with regard to the county or the boards and granted their motions for summary judgment. The court denied the motions for summary judgment filed by the other defendants.
 
 II
 
 7
 At the outset, we note that the county is a proper and necessary party to resolve Avery's claim against the boards. The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held. Fed.R.Civ.P. 17(b); 3A Moore's Fed.Prac. § 17.19 at 17-199; 6 Wright & Miller, Fed.Prac. & Proc. § 1562 at 738. A North Carolina statute expressly provides that a county is a legal entity which may sue and be sued. N.C.Gen.Stat. § 153A-11.
 
 
 8
 Neither the Board of Health nor the Board of Social Services is a legal entity separate and apart from the county. Both boards are created by, and are extensions of, the county. N.C.Gen.Stat. §§ 108-7 and 130-13. Consequently, if Avery is entitled to recover damages under § 1983 because of the boards' conduct, the county would be liable.
 
 III
 
 9
 In Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the Supreme Court held that a local government may be liable under § 1983 for an injury caused by a "policy or custom ... made by its lawmakers or ... those whose edicts or acts may fairly be said to represent official policy ...." These constitutional deprivations may be "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 691, 98 S.Ct. at 2036. On the other hand, "a municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691, 98 S.Ct. at 2036.
 
 
 10
 The county and the boards may be liable under § 1983 if their policies or customs actually caused Avery's injuries. See Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Avery need not prove, however, that members of the boards personally participated in, or expressly authorized, her sterilization. See Sims v. Adams, 537 F.2d 829, 831 (5th Cir. 1976). Official policy may be established by the omissions of supervisory officials as well as from their affirmative acts. In Withers v. Levine, 615 F.2d 158 (4th Cir. 1980), we held that supervisory officials charged with the responsibility of making rules may be subject to § 1983 liability where their unreasonable failure to make rules causes their employees' unconstitutional practices. Accord, Dimarzo v. Cahill, 575 F.2d 15, 17-18 (1st Cir. 1978). Thus, the conduct of the boards may be actionable if their failure to promulgate policies and regulations rose to the level of deliberate indifference to Avery's right of procreation or constituted tacit authorization of her sterilization. See Estelle v. Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976); Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980); Note, Municipal Liability under Section 1983: The Meaning of "Policy or Custom," 79 Columbia L.Rev. 304, 309-18 (1979). This issue generally is one of fact, not law. See Turpin, 619 F.2d at 201.
 
 
 11
 A single incident or isolated incidents are normally insufficient to establish supervisory inaction upon which § 1983 liability may be based. Woodhous v. Virginia, 487 F.2d 889 (4th Cir. 1973). It is not essential, however, that Avery show that all persons suspected of having the sickle cell trait have been mistreated. It is enough that an identifiable group of people, of whom Avery is a part, is subject to constitutional deprivations through the inaction of the boards. Withers v. Levine, 615 F.2d 158, 161 (4th Cir. 1980).
 
 IV
 
 12
 There can be no doubt that North Carolina law required both boards to supervise their employees and to promulgate guidelines and policies to protect the health and well-being of the citizens of the county. N.C.Gen.Stat. § 130-17(b) states, in part, that "(t)he local boards of health shall make such rules and regulations, not inconsistent with law, as are necessary to protect and advance the public health." The Board of Social Services is required to "advise county and municipal authorities in developing policies and plans to improve the social conditions of the community." N.C.Gen.Stat. § 108-15(2). Furthermore, North Carolina has recognized that the prevalence of sickle cell syndrome is a matter of statewide and local concern. N.C.Gen.Stat. §§ 143B-188, et seq. The state has specifically imposed on local health departments the duty to provide testing and counseling for residents who may be afflicted.
 
 
 13
 Read in the light most favorable to Avery, the evidence discloses that a trier of fact could reasonably find that the boards did not adequately discharge their statutory duties. Burke County has a substantial black population, and the sickle cell trait affects approximately 10% of the black people in the United States. One member of the Board of Health testified that as a practicing physician he was aware that the board was involved in the sterilization of women. Nevertheless, prior to Avery's sterilization, neither board adopted policies, rules, or regulations for counseling and sterilizing persons believed to have sickle cell trait. One member of the Board of Health, in fact, denied that the board was required to set any policies for the Department of Health or to make any rules to protect the public health.[2] These activities were by custom left solely to the standardless discretion of individual employees.
 
 
 14
 In addition, both Health Department nurses who recommended Avery's sterilization testified that they had no special training in handling sickle cell cases. The social work trainee testified that she was assigned to counsel Avery about sterilization only eight days after she was hired.
 
 V
 
 15
 The essential elements of any § 1983 action are proof of conduct "committed by a person acting under color of state law" that "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, --- U.S. ----, ----, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). It is evident that the county, through the boards, was acting under color of state law. Also, the right of procreation central to Avery's complaint is constitutionally protected by the due process and equal protection clauses of the fourteenth amendment. Roe v. Wade, 410 U.S. 113, 153, 164, 93 S.Ct. 705, 726, 732, 35 L.Ed.2d 147 (1973); Skinner v. Oklahoma, 316 U.S. 535, 538, 541, 62 S.Ct. 1110, 1111, 1113, 86 L.Ed. 1655 (1942); Downs v. Sawtelle, 574 F.2d 1, 11 (1st Cir. 1978); Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). Two controverted issues remain: (1) whether an inference of deliberate indifference or tacit authorization may be drawn from the facts pertaining to the boards' inaction; and (2) whether the boards thereby caused a deprivation of Avery's constitutionally protected right to procreation.
 
 
 16
 In determining whether summary judgment was appropriate for the disposition of these issues, we must give Avery the benefit of all reasonable inferences that can be drawn from the facts. 10 Wright & Miller, Federal Practice and Procedure, § 2725 at 510. This court has previously emphasized that summary judgment must be denied if a genuine issue of inference from fact is presented. In American Fidelity and Casualty Co. v. London and Edinburgh Insurance Co., 354 F.2d 214, 216 (4th Cir. 1965), the court explained:
 
 
 17
 In order to grant a motion for summary judgment it must be shown 'that there is no genuine issue as to any material fact.' Fed.R.Civ.P. 56(c). Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from them. It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.
 
 
 18
 These principles govern this appeal. Although the parties do not dispute the basic facts, they reasonably disagree about the inferences that can be drawn from them. Therefore, the issues that divide the parties should be resolved by plenary rather than summary procedures. The judgment of the district court is vacated, and this case is remanded for further proceedings. Avery shall recover her costs.
 
 
 
 [1]
 The court certified this judgment as final pursuant to Fed.R.Civ.P. 54(b) and stayed all proceedings against the other defendants pending this appeal
 
 
 [2]
 The board member testified, in part, as follows:
 Q. Was it a part of the responsibility of the board of health to make rules and regulations to protect the public health?
 A. No.
 Q. Was the purpose of the board of health to set up any sort of policies for the department of health?
 A. No, that was left up to the health director so far as I was concerned.
 Q. Do you know if the board ever set up any policies as to the procedures the health department should go through before they ever sterilized anybody?
 A. I don't know a thing about that.
 Q. Do you know if the board ever considered any sort of policies that way, whether they passed them or not?
 A. Not to my knowledge.
 Q. Okay. Do you know if the board set up any policies as to supervising the health department employees?
 A. Not the board. That's up to the director to do that.