Rhonda R. MILLIGAN, Appellant,

v.

The CITY OF NEWPORT NEWS, Appellee.

No. 83–1721.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1984.

Decided Sept. 19, 1984.

228

Jeremiah A. Denton, III, Virginia Beach, Va., for appellant.

Kris J. Sundberg, Asst. City Atty., Newport News, Va. (Robert V. Beale, City Atty., Newport News, Va., on brief), for appellee.

Before WIDENER, PHILLIPS, and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Rhonda R. Milligan appeals from the district court's dismissal of her action under 42 U.S.C. § 1983 seeking damages for personal injuries allegedly caused by the negligent conduct of employees of the defendant-municipality that was traceable to the municipality's failure adequately to train them. The court dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a cognizable claim. We affirm the dismissal on the merits.

I

The critical allegations of Milligan's complaint, accepted as true for purposes of this appeal, are as follows. On December 31, 1982, Milligan sustained serious injuries to her spinal cord when the vehicle in which she was a passenger left the road and crashed. Within minutes after the accident, emergency medical technicians (EMTs) and police officers, all employees of the City of Newport News (City), the defendant-appellee in this case, arrived at the scene and "assumed care and control" of Milligan. These officers negligently failed to recognize Milligan's state of delirium and her urgent need for prompt medical attention and instead of performing routine tests that would have disclosed that need, caused Milligan to sign a refusal of medical care form and called a cab to take her home. When the cab arrived, the officers placed Milligan into the cab, causing further injury to her spine.

When the cab arrived at Milligan's residence, she alleges, the cab driver told her to go inside. When Milligan responded that she could not move her legs, the driver summoned Newport News police officers who upon arrival pulled Milligan from the cab, "dragged her into the house, and flopped her down on the couch in her living room." Each of these acts negligently performed by City personnel, and all of them in combination, exacerbated Milligan's earlier-incurred spinal injury, ultimately bringing about her present quadraplegic condition.

Milligan brought suit against the City alleging that her injuries were the proximate result of the City's negligent or grossly negligent failure adequately to train and supervise its emergency personnel in the "diagnosis, handling, and treatment of automobile accident victims." This failure, she alleges, constituted "reckless and callous indifference to the plaintiff's federally protected rights" and deprived her of "liberty ... without due process of law" in violation of 42 U.S.C. § 1983.

The district court dismissed Milligan's action because of the absence of a vital allegation: that the City's emergency personnel deprived Milligan of constitutionally protected rights pursuant to an "official policy, practice, or custom" of the City. Thus, the court held, under principles enunciated in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that the City could not be held liable for the allegedly unconstitutional acts of its employees which gave rise to Milligan's injuries. This appeal followed. ·

II

Before considering the legal sufficiency of Milligan's complaint, we state briefly the controlling principles of law.

First, municipal liability under § 1983 may not be predicated solely upon a respondeat superior theory. Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal "policy or custom." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037.

Such a policy or custom may be found in edicts of the city's formal decision-making body or in "persistent ... practices of [municipal] officials" having the *de facto* force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970); *Languirand v. Hayden*, 717 F.2d 220, 222 (5th Cir.1983). In addition, such a policy or custom may possibly be inferred from continued inaction in the face of a known history of

widespread constitutional deprivations on the part of city employees, *see Wellington v. Daniels,* 717 F.2d 932 (4th Cir.1983) (police brutality), or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state. *See Avery v. County of Burke,* 660 F.2d 111 (4th Cir.1981) (sterilization of women with sickle cell condition). In corollary to these principles, it follows that a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees. *See, e.g., Rizzo v. Goode,* 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976) (no municipal liability where incidents did not exceed statistical norm for comparable municipalities); *Wellington v. Daniels* (no municipal liability in absence of widespread police brutality).

■ Furthermore, even where such a "policy" of municipal inaction might be inferred, it must still be shown to have been the "moving force of the constitutional violation" specifically charged in order to create municipal liability. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). This is to say that while a municipality's "policy" of inaction need not be found to have effectively commanded the particular violation, it must be of such a character that municipal employees could reasonably infer from it tacit approval of the conduct in issue. For only so could the requisite causal connection between policy and constitutional deprivation be found. *See Wellington,* 717 F.2d at

936 ("tacit authorization" required as basis for requisite causal connection). From this it follows that municipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted. *See, e.g., Dodson,* 454 U.S. at 326, 102 S.Ct. at 454.

### III

■ With these principles in mind, we consider Milligan's complaint and conclude, as did the district court, that it fails in several respects to allege a cause of action cognizable under 42 U.S.C. § 1983. While the complaint alleges in legal, conclusory terms [1] that the City was "grossly negligent" in failing adequately to train its personnel and that this exhibited "callous disregard" for Milligan's constitutional rights, there are no factual allegations of known, widespread conduct by its employees comparable to that alleged as to Milligan, *cf. Wellington v. Daniels,* 717 F.2d 932 (4th Cir.1983), nor could the facts alleged support the conclusion that the conduct charged as to Milligan was part of a known course of conduct by city employees having manifest potential for causing constitutional deprivations to an identifiable group of persons occupying a special relationship to the state, *cf. Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir.1981).[2] There is, accordingly, no properly pleaded allegation of the existence of a "policy, practice or custom" upon which municipal liability for the deprivations allegedly suffered by Milligan could be based.

Furthermore, even if it be considered that the complaint sufficiently alleged a

---

**1.** The complaint was not filed *pro se. Cf. Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**2.** Seeking to bring her allegations within the asserted reach of *Avery,* Milligan argues that she is a member of such an "identifiable group," i.e., the set of all victims of automobile accidents which occur in the City of Newport News. Without conceding the broad reach for the *Avery* rule that plaintiff asserts, we disagree that the "group" in which Milligan claims inclusion

is "identifiable" in the sense employed in *Avery.* In *Avery,* the group affected by defendants' alleged sterilization policies consisted of black females with the sickle cell condition, a group "identifiable" in advance of the implementation of the "policy" there in question. By contrast, Milligan's alleged "group" is identifiable only post hoc as those persons who in fact have been affected by isolated conduct of city employees. The difference in causal connection terms is obvious.

municipal "policy, practice or custom" or inaction or omission to train its employees, there is no factual allegation, because there could not be, to support the conclusion that such a policy was the "moving force" in causing Milligan's injuries in the sense that it was relied upon by the employees as tacit approval of their conduct. At most, the complaint asserts liability on the theory that the City might have, but did not, reduce the risk of harm to Milligan from the negligent, though well-intended, acts of those of its employees who attempted to render aid at the scene of the accident. This does not suffice to state a claim for municipal liability under 42 U.S.C. § 1983. *Cf. Dodson,* 454 U.S. at 326, 102 S.Ct. at 454.

IV

The district court dismissed Milligan's complaint for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim upon which relief can be granted. We affirm the court's judgment of dismissal insofar as it holds that Milligan has not stated a claim cognizable under 42 U.S.C. § 1983. *See Bell v. Hood,* 327 U.S. 678, 684–85, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

AFFIRMED.