KLING, et al., Plaintiffs,

v.

HARRIS TEETER INC.
et al., Defendant.

No. 3:00CV609–MCK.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 21, 2002.

Chiege O. Kalu Okwara, Law Office of Chiege O. Kalu Okwara, Charlotte, NC, for plaintiffs.

Michael J. Rousseaux, Kenneth R. Raynor, Templeton & Raynor, P.A., Anthony T. Lathrop, Moore & Van Allen, Ryan D. Bolick, Cranfill, Sumner & Hartzog, Charlotte, NC, for defendant.

## ORDER

McKNIGHT, United States Magistrate Judge.

**THIS MATTER IS BEFORE THE COURT** for ruling on Defendant Horne's motion for Judgment on the Pleadings (doc. 22); Defendant Harris Teeter's motion for summary judgment as to Cynthia Kling (doc. 26); Defendant Harris Teeter's motion for summary judgment as to Christine Kling (doc. 28); and Defendant Horne's motion for summary judgment (doc. 31). These motions are ripe for consideration.

### I. Factual and procedural background

On March 16, 1999, Plaintiff Christine Kling ("Plaintiff") entered Defendant Harris Teeter's ("Harris Teeter") store on Monroe Road with her daughter-in-law, Plaintiff Cynthia Kling, ("Kling") and her grandchild. While in line at the checkout, Plaintiff wrote a check for her purchases and gave it to the cashier. When the cashier tried to enter Plaintiff's check into the store's register system, a code appeared on the register screen alerting the cashier to check with customer service before proceeding with the transaction. The cashier told Plaintiff to wait while she went to customer service, leaving the register area. Plaintiff, who had been bending down to straighten candy that her grandchild pulled off the display rack, testified that she did not hear the cashier tell her to wait. When Plaintiff looked up, the cashier was gone with her check. Even though she received no receipt, Plaintiff testified that the grocery bagger indicated that she could leave the store. Plaintiff then left the store with her groceries.

At the time of this incident, Plaintiff had written several checks to Harris Teeter

that were returned for insufficient funds. Each time a check was returned, Plaintiff was called to come into the store in person and pay cash for the amount due on the returned check. Due to this history, Harris Teeter's register system required customer service approval on Plaintiff's check and thus, the code appeared that day to alert the cashier to check with customer service.

When the cashier and customer service representative went back to the register area to discuss the check problem with Plaintiff, Plaintiff was gone. The cashier and customer service representative told the co-manager, David Benton, that Plaintiff left with her groceries while they were trying to resolve the problem with her check. Another manager, overhearing the conversation, told Benton that she had been to court several times with Plaintiff over bad checks written to the store.[1] Benton then called Monroe Public Safety and reported the incident.

Defendant Officer Chris Horne ("Horne") from Monroe Public Safety came to the store that evening. After taking a statement from the cashier, he had a larceny warrant issued for Plaintiff Christine Kling. Several officers from Monroe Public Safety went to Plaintiff's home that morning around 4:00am and arrested her. Kling was at home with Plaintiff and witnessed her mother being taken to the police car in handcuffs. At her bail hearing at the police station, Plaintiff testified that Defendant Horne told the magistrate that she was a liar and they had been looking for her. The magistrate required her to post a $300.00 bond before she could be released.

Several hours later, after being released from jail, Plaintiff and Kling returned to the store to pay off the check. Plaintiff testified that the manager they talked to called her a "liar" and would not return her check. Later that day, after discovering that they had confused Plaintiff with the other customer, Christine King, a manager called Plaintiff and told her that there was no longer a problem with the check and apologized. When Plaintiff and Kling returned to the store to pick up the check, the manager explained the mix-up with the names and again apologized. When manager Benton learned that she had been arrested, he called Monroe Public Safety and told Horne that they did not want to press charges against Plaintiff. A few days after the incident, someone from Harris Teeter's corporate office called Plaintiff and offered to "fill her refrigerator" with groceries to apologize, which Plaintiff declined.

While Harris Teeter declined to press charges, Plaintiff had to go to her court appearance because Officer Horne did not dismiss the warrant until just before she appeared before the magistrate. The charges have now been expunged from her record.

Plaintiff filed an eight-count complaint alleging (1) "defamation and slander *per se;*" (2) "negligent employment and/or inadequate training;" (3) "Intentional infliction of mental distress;" (4) "Negligent infliction of mental distress;" (5) "Assault and Battery;" (6) "Violation of Civil Rights;" (7) "Malicious Prosecution;" and (8) "False imprisonment and Actual Imprisonment." [Doc. 1].

## II. Analysis

Defendant Harris Teeter filed a motion for judgment on the pleadings alleging that Plaintiffs had failed to state a claim as to the various causes of action. Before the

---

**1.** Harris Teeter later determined that the person the manager remembered from court was another customer, Christine *King,* not Plaintiff Christine *Kling.*

response and reply time had expired on this motion, Defendant Harris Teeter filed a motion for summary judgment which incorporates the arguments made in the motion for judgment on the pleadings. For ease of analysis, this order will address the arguments as presented in the motion for summary judgment and will address arguments presented by both defendants as to each claim.

### 1. Summary judgment standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes will demonstrate the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Further, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Rule 56(e)).

Further, in opposing summary judgment, nonmovants must do more than present a mere scintilla of evidence in their favor. They must present sufficient

evidence that reasonable jurors could find for them by a preponderance of the evidence. An apparent dispute is "genuine" only if "the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find in [the non-movant's] favor." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (internal quotation marks and citation omitted).

### 2. Defamation and slander *per se*[2,3]

The Complaint is unclear as to what statements allegedly constitute defamation and slander *per se*. Plaintiff's response is also vaguely worded but Plaintiff does argue that she was verbally called a thief and accused of stealing and was charged with larceny. As to the verbal accusation, she does not identify the speaker or the communication, nor is there any evidence that anyone verbally referred to her as a "thief" or verbally accused her of stealing. No cause of action can lie where there is no supporting evidence.

To further confuse the matter, in her deposition, Plaintiff testified that the slander claim was based upon the store manager calling her a liar. In an abundance of caution, the undersigned will evaluate this comment despite the fact that Plaintiff's counsel does not allege or argue it.

First[4], Plaintiff alleges slander *per se*. North Carolina law recognizes two kinds of slander. Slander *per se* is an oral communication of false and defamatory words to a third person which is defamatory on its face and does not require the showing of malice or special damages.

---

**2.** All claim headings are taken from Plaintiff's Complaint.

**3.** Although the Complaint is unclear as to which Plaintiff this claim is referring, there is no evidence or argument to support a claim by Cynthia Kling. Thus, the claim will be evaluated only as to Christine Kling.

**4.** While Plaintiff uses defamation and slander interchangeably, because the alleged statements were spoken, rather than printed, they must be analyzed as slander. *Morrow v. Kings Dept. Stores*, 57 N.C.App. 13, 290 S.E.2d 732 (1982).

*Morrow v. Kings Dept. Stores*, 57 N.C.App. 13, 290 S.E.2d 732 (1982). Slander *per quod* is an oral communication of false and defamatory words to a third person which is not defamatory on its face and requires the injurious character of the words be shown, as well as special damages. *Id.*

 Under North Carolina law, calling a person, in effect, a liar, without linking the statement to their trade or business, cannot constitute slander *per se. Johnson v. Bollinger*, 86 N.C.App. 1, 356 S.E.2d 378 (1987). Accordingly, as a matter of law, no action can lie for slander *per se* on this comment. Even if Plaintiff alleged slander *per quod*, Plaintiff cannot show it because there is no evidence that any third person heard this comment.

 As to Defendant Horne's issuance of the arrest warrant for larceny, citing no supporting authority, Plaintiff argues that this constitutes libel as a written communication of defamatory words published to third persons.[5] It is well-settled that when an otherwise defamatory communication is made in furtherance of a political, judicial, social, or personal duty, the declarant is entitled to a qualified privilege unless actual malice is shown. *Dobson v. Harris*, 352 N.C. 77, 530 S.E.2d 829 (2000).

 It is undisputed that the application for the warrant was done in furtherance of Defendant Horne's duties as a police officer. Moreover, Plaintiff has not alleged, nor argued, malice, nor is there any evidence thereof. Under the caselaw, Defendant Horne is entitled to a qualified privilege, barring an action for libel *per se.* Defendants' motions for summary judgment as to this claim should be granted.

### 3. Negligent Employment and/or Inadequate training

While the Complaint and Response are confusing, Plaintiffs allege that Defendant City of Monroe negligently employed and retained Defendant Horne and other Officers who participated in her arrest, citing "Section 1983."

 In order to assert liability for negligent employment and retention, a plaintiff must first show an unconstitutional action by the allegedly negligently employed and retained individual. *Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir.1990). In other words, Plaintiffs must first show that Defendant Horne and his fellow officers acted in violation of the constitution. Because Plaintiffs cannot show the underlying constitutional violation, for reasons discussed below, Plaintiffs cannot assert liability against the employer for their employment and retention. Defendants' motions for summary judgment as to this claim should be granted.

### 4. Intentional infliction of mental distress[6]

 To support a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must show that defendant engaged in (1) extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress. *Hogan v. Forsyth Country Club*, 79 N.C.App. 483, 340 S.E.2d 116 (1986); *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 774 (4th Cir.1997); *Jackson v. Kimel*, 992 F.2d 1318, 1324 (4th Cir. 1993).

The Complaint is vague and confusing. Plaintiffs only specifically allege that

---

5. Plaintiff did not allege "libel" in the Complaint.

6. The undersigned assumes that Plaintiff intends to allege intentional infliction of *emotional,* not *mental,* distress.

Plaintiff's arrest in the middle of the night, in front of her daughter-in-law, constituted extreme and outrageous conduct. Defendants move for summary judgment on this claim, arguing that no conduct was sufficiently "extreme and outrageous" to support this claim.

"Extreme and outrageous conduct" is a classification reserved for acts which "shock the conscience" or amount to conduct "intolerable in decent society." Examples of such conduct include firing a weapon into an occupied vehicle, shoving an elderly man, and nonconsensual sexual touching of female workers by male supervisors. *See, e.g., West v. King's Dept. Store,* 321 N.C. 698, 365 S.E.2d 621 (1988); *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981); *Hogan v. Forsyth Country Club,* 79 N.C.App. 483, 340 S.E.2d 116 (1986).

Plaintiffs do not respond to the argument that they failed to meet the first element of this claim, that the actions rise to the level of extreme and outrageous conduct. Instead, Plaintiffs merely argue that because they obtained medical and mental health treatment, they have satisfied the required elements. While this showing is relevant to third requirement, it does not prove the first requirement, that the conduct was sufficiently "extreme and outrageous."

■ As to this first requirement, applying the caselaw, there is no showing that the officers' conduct, in arresting Plaintiff at 4:00am in front of a family member, is either unusual in performance of their duties, nor does it rise to the level of "extreme and outrageous conduct." Defendants' motions for summary judgment as to this claim should be granted.

### 5. Negligent infliction of emotional distress

■ To support a claim for negligent infliction of emotional distress, a plaintiff must show that: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress; and (3) the conduct did cause severe emotional distress. *Fields v. Dery,* 131 N.C.App. 525, 509 S.E.2d 790 (1998). Where a defendant's conduct would not have caused injury to an ordinary person, "absent evidence of the defendant's knowledge of the plaintiff's emotional or mental condition [making her particularly or peculiarly susceptible to emotional distress], the plaintiff cannot recover for negligent infliction of emotional distress." *Id.* at 793, *quoting Wrenn v. Byrd,* 120 N.C.App. 761, 464 S.E.2d 89, 93 (1995).

■ Defendants move for summary judgment on this claim, arguing that Plaintiffs have not alleged, and do not show, that any distress was reasonably foreseeable. Plaintiffs do not respond to this argument other than to state the elements cited above. Instead, Plaintiffs merely argue again that because they obtained medical and mental health treatment they have satisfied the required elements. While this showing is relevant to third requirement, it is insufficient to show that any distress is "reasonably foreseeable." As Plaintiffs have not made the required showing, Defendants' motions for summary judgment as to this claim will be granted.

### 6. Assault and Battery

■ The Complaint alleges that Defendant Horne committed assault and battery while arresting Plaintiff. Under North Carolina law, to prevail on a claim against a police officer for assault and battery during arrest, a plaintiff must show that excessive force was used. *See Todd v. Creech,* 23 N.C.App. 537, 209 S.E.2d 293,

295 (1974) (requiring showing of "substantial evidence" of "unreasonable force").

■ Defendant Horne moves for summary judgment on this claim, arguing that Plaintiff has not alleged, nor shown evidence of, excessive force. Plaintiff does not argue that the force used was excessive and concedes that Defendant Horne only touched her incident to handcuffing her. Instead, she argues that because the arrest was warrantless [7] and unsupported by probable cause [8], and the time of the arrest was "unreasonable," *a fortiori*, any "touching" of her during the arrest would be unreasonable force. Citing no authority, Plaintiff argues that while the force was not excessive under the caselaw, because she feels she should not have been arrested at all, any arrest should be considered an assault and battery. This is not the law, however. As Plaintiff has not made the required showing of excessive force, Defendant Horne's motions for summary judgment as to this claim will be granted.

### 7. Violation of civil rights

Plaintiff alleges that Defendants Horne, the City of Monroe and Harris Teeter conspired to violate Plaintiff's civil rights under 42 U.S.C. § 1983 and § 1985, and Article I, Section 19 of the North Carolina Constitution, by "seizing, assaulting, and searching plaintiff's person and property without probable cause."

### A. § 1983 claim

#### i. Defendant Horne in his official capacity

Defendant Horne moves for summary judgment on this claim, arguing that he cannot be sued in his official capacity.

■ The Supreme Court of the United States, as well as the courts of North Carolina, have specifically held that a plaintiff may not pursue a § 1983 claim against an official in his official capacity if the plaintiff is seeking monetary damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Will*, the Supreme Court of the United States has held that state government officials, such as police officers, when sued in their official capacities, are not "persons" as defined by § 1983. *Id.* Instead, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and as such, it is no different from a suit against the state itself. *Will*, 491 U.S. at 71, 109 S.Ct. 2304. Consequently, no such claim can exist. *See, inter alia, Lee v. Greene*, 114 N.C.App. 580, 442 S.E.2d 547 (1994) (holding, in an excessive force case that "[t]here can be no claim [for monetary damages] because in their official capacities, they are not persons covered by § 1983"); *Hawkins v. State*, 117 N.C.App. 615, 453 S.E.2d 233 (1995) (upholding summary judgment dismissing such a claim.)

Plaintiffs allege their § 1983 claims against Defendant Horne in his official capacity. Moreover, it is undisputed that Plaintiffs are seeking monetary damages. Applying the caselaw, Plaintiffs cannot sue Officer Horne in his official capacity pursuant to § 1983. Accordingly, Defendant Horne's motion for summary judgment as to this claim should be granted.

#### ii. City of Monroe

Defendant City of Monroe moves for summary judgment on Plaintiffs' § 1983 claims, arguing that the city cannot be

---

**7.** This assertion is refuted by the undisputed evidence which shows that the warrant was obtained prior to arrest, as discussed below.

**8.** This assertion is also refuted by the undisputed evidence, as discussed below.

liable for these claims because Plaintiffs show no official policy which violated their civil rights.

■■■■ The United States Supreme Court held that a municipality may not be held liable under § 1983 based upon the doctrine of *respondeat superior.* A local government and its officials may only be held liable when the municipality or its officials take action under an official policy which violates an individual's constitutional rights. *Monell v. DSS of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Following *Monell,* the Supreme Court of the United States has held that a plaintiff must establish the existence of an official policy by: (1) establishing the existence of a policy which was formally made by the local governmental body; (2) establishing that a policy was made by the acts and decisions of high ranking officials with final decision making authority; (3) establishing the existence of a persistent and well-settled custom sufficient to constitute a *de facto* policy; or (4) establishing the existence of deliberate indifference by the governmental body in the supervision and training of its employees. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir.1987), *cert. denied, Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

■■■■ Plaintiffs do not identify any policy which impacted the actions complained of, much less allege or argue that they have established a policy in any of the four ways enumerated above. Further, Plaintiffs have not come forward with any evidence or forecast of evidence of a City "custom" or "pattern" sufficient to establish the existence of official policy. In *Monell,* the Supreme Court held that a custom may not arise out of a single incident. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. Mere negligence in the supervision or oversight of an officer, even if Plaintiffs could show it, or the occurrence of a single or isolated incident, is insufficient to establish a city policy or custom. *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983) (only where there is a history of widespread abuses of constitutional rights can knowledge be imputed to the municipality); *Milligan v. City of Newport News,* 743 F.2d 227 (4th Cir.1984). Thus, Plaintiffs have failed to produce any evidence of a policy or custom through which liability can be imputed to the City, Defendant City of Monroe's motion for summary judgment should be granted on this claim.

### iii. Defendant Horne in his individual capacity

Defendant Horne moves for summary judgment on this claim, arguing that qualified immunity shields him from liability in his individual capacity.

Qualified immunity shields government officials from personal liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Edwards v. City of Goldsboro,* 178 F.3d 231, 250 (4th Cir.1999). The purpose of qualified immunity is "to remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of the facts to a jury." *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991).

■■■■ In excessive force cases, the Fourth Circuit held that when evaluating a defense of qualified immunity by one acting pursuant to a warrant, the critical is-

sue is whether there was probable cause to seek the warrant. *See Wadkins v. Arnold,* 214 F.3d 535 (4th Cir.2000) *following Malley v. Briggs,* 475 U.S. 335, 344–345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (holding that "only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of the immunity be lost").

██ Here, at the time of the issuance of the warrant, Defendant Horne was told by Harris Teeter employees that Plaintiff had tendered a bad check and left the store with her groceries while the employees were discussing the problem with her check and before she was told that payment had been accepted. Even assuming that Plaintiff's testimony about the incident is true—that she did not hear the cashier tell her to wait and that she thought the bag boy was indicating that she could leave—and further assuming that this testimony undermines a finding of probable cause, Defendant Horne did not have this information at the time he issued the warrant. Plaintiff argues that because Harris Teeter later declined to press charges, no probable cause existed to seek the warrant. However, it is undisputed that Harris Teeter did not decline to press charges until after Plaintiff was arrested. Again, Defendant Horne did not have this information at the time he issued the warrant. Given the information available to Defendant Horne at the time he sought the warrant, sufficient probable cause existed to support the issuance of the warrant. Accordingly, qualified immunity shields Defendant Horne from suit in his individual capacity in a § 1983 action. Defendant's motion for summary judgment should be granted on this claim.

### iv. Harris Teeter

As to Defendant Harris Teeter, Plaintiffs allege that Harris Teeter conspired with Defendants Horne and the City of Monroe to arrest her in violation of § 1983.

██ To prevail on a civil conspiracy claim, a plaintiff must show: (1) an agreement between two or more persons; (2) to do an unlawful act or act in an unlawful way; (3) which agreement resulted in injury to the plaintiff. *Swain v. Elfland,* 145 N.C.App. 383, 550 S.E.2d 530 (2001).

Here, Plaintiffs would have to show that Harris Teeter agreed with Defendants Horne and the City to violate Plaintiffs' civil rights by arresting her without probable cause. As discussed above, probable cause did exist at the time the warrant was issued. Because the underlying act did not violate Plaintiffs' civil rights, Harris Teeter cannot be held liable for conspiracy thereon. Accordingly, Defendant Harris Teeter's motion for summary judgment as to this claim should be granted.

### B. § 1985 claim

Defendants move for summary judgment on this claim, arguing that Plaintiffs cannot prevail because they cannot show discriminatory animus.

██ In order to prevail on a claim pursuant to 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy motivated by discriminatory animus; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons, the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to one's person or property or deprivation of any right or privilege." *Thomas v. Northern Telecom, Inc.,* 157 F.Supp.2d 627, 633 (M.D.N.C.2000) *citing Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

While Plaintiffs aver in the response that their claim is based upon "sexual dis-

crimination," the Complaint utterly fails to allege this. Moreover, even if discriminatory animus based upon sex was alleged in the Complaint, there is no evidence that such animus impacted Defendants' actions. The fact that Plaintiffs are female, standing alone, is insufficient to support a § 1985(3) claim. Plaintiffs must show discriminatory animus. As they do not, Defendants' motion for summary judgment on this claim should be granted.

## C. State constitutional claim

Defendants move for summary judgment on this claim, arguing that it is not available where Plaintiffs have an adequate state remedy available.

■ Under North Carolina law, a plaintiff can bring a claim under the state constitution only "in the absence of an adequate state remedy" for the same violation. *Hughes v. Bedsole*, 48 F.3d 1376 (4th Cir.1995) *citing Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992). An adequate state remedy exists when there is an alternative state law cause of action which "if successful, would have compensated [the plaintiff] for the same injury he claims in the direct constitutional claim." *Alt v. Parker*, 112 N.C.App. 307, 435 S.E.2d 773, 779 (1993). This is so even if a plaintiff cannot prevail on the alternative state law cause of action. *Id.* (Existence of alternative state law tort claim precluded direct claim under state constitution, even though plaintiff unable to recover because defendant State had tort immunity defense).

Here, Plaintiffs have asserted a myriad of state law causes of action (including intentional infliction of emotional distress, negligent infliction of emotional distress,

defamation, negligent hiring, and assault and battery) which, if successful, would compensate them for their alleged injuries. Applying the caselaw, because there is an adequate state remedy, Plaintiffs cannot seek redress under the North Carolina Constitution. Accordingly, Defendants' motion for summary judgment should be granted on this claim.[9]

## 8. Malicious prosecution

Plaintiff alleges that because Defendants arrested her and did not drop the charges until her court date three weeks following her arrest, they are liable for malicious prosecution. While Plaintiff names all Defendants in this cause of action, in her response, she argues that Defendants Horne and City of Monroe are liable because they continued the prosecution despite the fact that Harris Teeter declined to press charges. Thus, Plaintiff does not allege this claim against Harris Teeter. Defendants move for summary judgment on this claim, arguing that Plaintiffs failed to show the required elements of the claim.

■ Under North Carolina law, to prevail on a malicious prosecution claim, a plaintiff must show: (1) that the defendant initiated the proceeding; (2) that he did so maliciously; (3) without probable cause; and that (4) the proceeding terminated in plaintiff's favor. *Jones v. Gwynne*, 312 N.C. 393, 323 S.E.2d 9, 11 (1984). Lack of probable cause is an essential element of malicious prosecution and the burden of proving lack of probable cause is on the Plaintiff. *Priddy v. Cook's United Dep't Store*, 17 N.C.App. 322, 194 S.E.2d 58 (1973); *Flippo v. Hayes*, 98 N.C.App. 115, 389 S.E.2d 613 (1990).

Plaintiff cannot show lack of probable cause. As discussed above, probable cause

9. While Defendants Horne and City of Monroe make a summary judgment argument with respect to a 42 U.S.C. § 1981 claim, no such claim is raised in the Complaint, nor do Plaintiffs discuss such a claim in any of their

pleadings. Moreover, there is no evidence in the record that such a claim is being pursued. Accordingly, as no § 1981 claim exists, the arguments challenging such a claim will not be addressed.

existed at the time of the issuance of the warrant.

Plaintiff argues in the alternative that because Defendant Horne continued to prosecute the offense after Harris Teeter informed him they did not want to press charges, Horne is liable for malicious prosecution, citing *Sanders v. English*, 950 F.2d 1152 (5th Cir.1992). However, *Sanders* is easily distinguished. In *Sanders*, the court found that a plaintiff could proceed on a malicious prosecution claim where the prosecuting officer received exculpatory information after the arrest which strongly suggested that the plaintiff had not committed the crime. Despite receiving this information, the officer continued to prosecute the case while the plaintiff remained in jail.

 Here, the evidence is undisputed that Harris Teeter simply declined to press charges. There is no evidence that the cashier recanted her statement that Plaintiff left with her groceries after tendering a check that the store had not accepted. These facts establish probable cause for the warrant and no information given to Horne casts doubt on these facts. As the officer who authorized the warrant, it is Horne's decision whether to prosecute the charge. In the absence of evidence that Horne received any exculpatory information from Harris Teeter, or anyone else, *Sanders* does not compel a finding that Plaintiff's claim should survive summary judgment. Defendants' motion for summary judgment on this claim should be granted.

### 9. False imprisonment and actual imprisonment

Defendants move for summary judgment on this claim, arguing that Plaintiff cannot show the required elements.

Under North Carolina law, the elements of a false imprisonment claim are: (1) the illegal restraint of plaintiff by defendant; (2) by force or threat of force; and (3) against the plaintiff's will. *See Fowler v. Valencourt*, 334 N.C. 345, 435 S.E.2d 530 (1993).

Plaintiff alleges that the restraint was illegal because she was arrested before a warrant was issued and without probable cause. The only evidence as to the time the warrant was issued is that the warrant was issued prior to arrest. [Doc. 39, Declaration of Chris Horne and attached warrant.] Further, as discussed above, probable cause existed at the time the warrant was issued. Thus, Plaintiff cannot show that the restraint was illegal and cannot prevail on her false imprisonment claim. Defendants' motion for summary judgment on this claim should be granted.

### III. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendants' motions for summary judgment [docs. 22, 28 and 31] as to both Plaintiffs and all claims are **GRANTED**. The motion for judgment on the pleadings is **DENIED AS MOOT**.