**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT WALKER; COURTNEY
WALKER,

        *Plaintiffs-Appellants,*

v.

PRINCE GEORGE'S COUNTY,
MARYLAND; JANET JACOBS, #907 in
her official capacity and individual
capacity,

        *Defendants-Appellees.*

No. 08-1462

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:07-cv-00123-AW)

Argued: May 14, 2009

Decided: July 30, 2009

Before Sandra Day O'CONNOR, Associate Justice
(Retired), Supreme Court of the United States,
sitting by designation, WILKINSON, Circuit Judge, and
Joseph F. ANDERSON, Jr., United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Associate Justice O'Connor
wrote the opinion, in which Judge Wilkinson and Judge
Anderson joined.

**COUNSEL**

Jason Christopher Crump, SMITH GRAHAM & CRUMP, LLC, Largo, Maryland, for Appellants. Stephen Thibodeau, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland, for Appellees.

---

**OPINION**

O'CONNOR, Associate Justice (Retired):

This is a case about a wolf named Dutchess. Concerned that the wolf's presence on residential property posed a risk to the public, a Prince George's County Animal Control Officer seized Dutchess and left word for her absent owners. Those owners sued the officer and the county for monetary damages, arguing that the seizure violated their civil rights. The district court concluded that the officer was entitled to qualified immunity and that the plaintiffs failed adequately to plead a claim against the county. We agree and consequently affirm the court's judgment.

I

Because plaintiffs-appellants Robert and Courtney Walker's claims were rejected on summary judgment, we view the factual evidence in the light most favorable to them. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In February 2006, Robert Walker obtained an animal that he believed was a dog. Walker and his wife, Courtney Walker, named the animal Dutchess and had her vaccinated for rabies. The veterinarian who performed the vaccination determined that Dutchess was an Alaskan Malamute, a breed of dog that looks like a husky. He gave the Walkers proof of the vaccination, which identified Dutchess as a dog. The

Walkers used this report to obtain a "dog/ferret/cat license" from Prince George's County.

In July, Robert Walker and his sister, Antonia Payne, had a heated confrontation in front of his home. Walker struck and cracked the windshield of Payne's car. Payne left and reported the incident to the Prince George's County Police Department. The Walkers also left the house. Payne returned to the Walkers' home, and when an officer arrived at the scene, she told the officer that Robert Walker kept a wolf as a pet. The officer contacted the county's Animal Management Division to report Payne's claim.

Defendant-Appellee Janet Jacobs, an Animal Control Officer, responded to the call. She observed that the animal was in an unlocked 12-foot by 12-foot chain-link kennel near the driveway and determined that it was a wolf based on its physical characteristics. She then called her supervisor, who told her to impound the animal. Jacobs did so and left notice for the Walkers, instructing them to contact the Animal Control Office.

The next day, the Walkers filed a petition with the Animal Control Commission, requesting Dutchess' return. In September, the Commission held a hearing and found that Dutchess was a wolf hybrid and that the Walkers consequently had violated Prince George's County Code § 3-176, a provision that prohibits the keeping of a wolf without a permit. The Walkers did not appeal the Commission's decision. Instead, they sued Prince George's County and Officer Jacobs. Seeking compensatory and punitive damages, the Walkers alleged in State court civil trespass, violation of Articles 24 and 26 of the Maryland Constitution, and violation of their Fourth Amendment rights under 42 U.S.C. § 1983. The defendants removed the action to the United States District Court for the District of Maryland and sought summary judgment. Officer Jacobs argued she was entitled to qualified immunity from suit, and the County challenged the sufficiency of the Walkers' plead-

ings. The Walkers filed a cross-motion for summary judgment, arguing that they lawfully possessed Dutchess on their property.

The district court granted the defendants' motion and denied appellants'. It concluded that Officer Jacobs' actions were reasonable under the Fourth Amendment. "Even assuming that Jacob's seizure was unreasonable," the court concluded, "it was reasonable for [her] to believe that her actions did not constitute a violation of Plaintiffs' constitutional rights." *Walker v. Prince George's County*, Civ. Action No. AW-07-123, slip op. at 7 n.5 (D. Md. Mar. 28, 2008). The court also held that the Walkers had failed adequately to plead a claim against the county under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), because they "failed to make any allegations in their complaint in regards to the existence of the County's policy, custom, or practice." *Walker*, Civ. Action No. AW-07-123, at 9. Lastly, the district court rejected the Walkers' contention that they lawfully possessed Dutchess. It concluded that the Walkers were not in lawful possession of the animal under county law, and that there was no evidence that they "ever intended to report their possession of a wolf or dog hybrid to comply with Maryland code." *Id.* at 13.

The Walkers appeal the grant of summary judgment in appellees' favor on their Fourth Amendment § 1983 claim and also the denial of their motion for summary judgment on that claim.* They also argue that they were entitled to summary judgment. We have jurisdiction to review the district court's opinion under 28 U.S.C. § 1291, and we review that

---

*Appellants also assert that their rights under Articles 24 and 26 of the Maryland Constitution were violated. Yet they fail to present an argument to that effect—indeed, even to discuss those provisions. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). We thus confine our analysis to their claim under the Fourth Amendment of the U.S. Constitution.

opinion *de novo*, *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc).

II

We affirm the judgment of the district court. Officer Jacobs was entitled to qualified immunity, and appellants failed adequately to plead a *Monell* claim against the County.

A

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. __, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There is a two-prong test for resolving qualified immunity claims. First, a court "must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Id.* at 815-16. Second, if the plaintiff has satisfied this first step, "the court must decide whether the right at issue was 'clearly established' at the time of [the] alleged misconduct." *Id.* at 816. (citation omitted). Overruling *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court recently held that "courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in [a] particular case." *Pearson*, 129 S. Ct at 818. Here, we think "it is plain that [the] constitutional right" postulated by the appellants "is not clearly established." *Ibid.* We thus decline to invest "a substantial expenditure of scarce judicial resources" by engaging in the "essentially academic exercise" of determining whether that right exists at all. *Id.* at 811, 818.

Appellants argue that the seizure of an animal may be reasonable for purposes of the Fourth Amendment only when an

official has first determined whether the animal is being law-
fully possessed. Their Fourth Amendment rights were vio-
lated, they contend, because they were not "giv[en] . . . time
to prove that they possessed a license for the animal." Appel-
lant Brief 20. They base this argument on the applicable ani-
mal control provisions. The Walkers concede, as they must,
that "both the State of Maryland and Prince George's County
have enacted laws prohibiting the possession of wolf-
hybrids." *Id.* at 19. They stress, though, that "[e]ach statute
contains exceptions," and they argue that they met these
exceptions. *Id.* "It is the nature of these exceptions," they con-
tend, "that ma[de]" Officer Jacobs' seizure of Dutchess "un-
reasonable, unjustified, and therefore illegal." *Id.* It is difficult
to imagine that the Fourth Amendment secures such a
right—that the lawfulness of the seizure of a dangerous ani-
mal turns not only on the risk it poses, but also on its registra-
tion status, a status that presumably has no bearing on the
reasons for seizure.

But as we have explained, we need not delay ourselves
with that inquiry because appellants' purported Fourth
Amendment right is certainly not "clearly established." In two
short paragraphs in their brief, appellants contend that "Offi-
cer Jacobs knew or should have known" that the Fourth
Amendment obliged her to inquire into the lawfulness of the
Walkers' possession of Dutchess before seizing the wolf. *Id.*
at 22. As authority, they cite only a single Prince George's
County Ordinance, § 3-176. That provision "enables persons
to lawfully possess wild and exotic animals as long as they
have a license or permit to do so." Appellant Brief 21. It was
clear that their possession of Dutchess might have been law-
ful, their argument goes, and thus the Fourth Amendment
right to an inquiry on that issue before seizure of the animal
was well recognized.

This contention fails for at least two reasons. First, the ordi-
nance upon which appellants rely says nothing about the law-
ful procedure for the seizure of a wolf. That a wolf may

lawfully be possessed does not mean that the lawfulness of its possession must be verified as a prerequisite to its seizure when that seizure is necessary to protect the public safety or otherwise. Appellants' understanding of the ordinance is further undermined by the fact that their construction stands in direct conflict with other applicable provisions. *See, e.g.*, *Walker*, Civ. Action No. AW-07-123, at 7 ("Jacobs was acting pursuant to the County law prohibiting the keeping of a wolf on one's premise and pursuant to the protocols of the Animal Control Office, wherein she has eighteen years of experience."); Md. CODE ANN. § 10-621(d)(1)(i-ii) (2008) (An animal must immediately be seized when "there is probable cause to believe that the possession of the animal is in violation of [law] or the animal poses a risk to the public health or the public safety."). Second, even if the county ordinance required such verification, that fact alone does not support the existence of a Fourth Amendment right. *See Virginia v. Moore*, 553 U.S. __, __, 128 S. Ct. 1598, 1602 (2008) (explaining that the Fourth Amendment is not "a redundant guarantee of whatever limits on search and seizure legislatures might have enacted"); *California v. Greenwood*, 486 U.S. 35, 43 (1988) ("[W]hether or not a search is reasonable within the meaning of the Fourth Amendment" has never "depend[ed] on the law of the particular State in which the search occurs.").

In short, appellants have failed to point us to any authority that even suggests the existence of their purported Fourth Amendment right. We have found none. To the contrary, we recently sustained a far more dramatic seizure of animals that were *known* to be properly licensed. *Altman v. City of High Point*, 330 F.3d 194 (4th Cir. 1998) (holding that it was objectively reasonable for police to shoot vicious dogs that were properly licensed and tagged). We thus cannot say that "it would have been apparent to a reasonable officer in [Officer Jacobs'] positio[n] that her actions violated the Fourth Amendment." *Walker*, Civ. Action No. AW-07-123, at 7 n.5. Consequently, she is entitled to qualified immunity.

Appellants devote a substantial portion of their brief to their creative argument that their possession of Dutchess was lawful. They had a "de facto" license to possess the wolf, they contend, which was preserved by a grandfathering provision in the applicable ordinances. Appellant Brief 10-17. That argument is irrelevant. Appellants are not here to seek the return of Dutchess, but to pursue monetary damages for a purported Fourth Amendment violation. As we have explained, Officer Jacobs cannot be held liable for failing to inquire into the lawfulness of the possession of Dutchess; it was reasonable for her to believe that the Fourth Amendment posed no obstacle to her immediate seizure of the wolf. Thus, by definition it does not matter whether the Walkers had a permit to possess Dutchess. Appellants' challenge to the denial of their motion for summary judgment is thus beside the point.

B

The Walkers failed adequately to plead a *Monell* claim against the County. Under *Monell*, a municipality's liability "arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.' " *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Thus, appellants were obliged to "identify a municipal 'policy,' or 'custom' that caused [their] injury." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). We agree with the district court that appellants "failed to make any allegations in their complaint in regards to the existence of the County's policy, custom, or practice, therefore failing to plead" a viable *Monell* claim. *Walker*, Civ. Action No. AW-07-123, at 9 (citing *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)).

Appellants assert without elaboration that a County policy to seize animals without inquiring whether their owners have valid permits for those animals "can be inferred from Officer

Jacobs' testimony" and that it should be "presumed that the County never checks to see if owners lawfully possess wild or exotic animals before seizing them." Appellant Brief 24. But they fail to explain the basis of their inference or the justification for their presumption. At best, plaintiffs have alleged that it was Officer Jacobs' "common practice based on her years of experience and training . . . to tell her supervisor what she is observing and then he will tell her whether she should take the animal." *Id.* at 21. Critically lacking is any support for the proposition that Officer Jacobs' common practice "implemented an official government policy or custom." *Walker*, Civ. Action No. AW-07-123, at 9 (quotation marks omitted).

As the Supreme Court has recently explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. __, ___, 129 S. Ct. 1937, 1949 (2009). And "[w]e are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-1950 (quotation marks omitted). Appellants' allegations "do not permit [us] to infer more than the mere possibility of misconduct." *Id.* at 1950. This mere possibility is inadequate to subject the County to appellants' suit for monetary damages.

### III

For the reasons stated, the judgment of the district court is hereby

*AFFIRMED*.