*556 KING, Circuit Judge,
concurring in part, dissenting in part, and concurring in the judgment:
I write separately to confirm my concurrence in — and admiration for — most of Judge Conrad’s well-crafted majority opinion, with the exceptions of Parts IV.B and V. Although I fully agree with the majority that the defendants are entitled to qualified immunity on the plaintiffs’ as-applied challenge to UMBC’s policy on facilities use, I would resolve that issue solely on the first prong of the Saucier test. More specifically, I would rule that the defendants are entitled to qualified immunity because no constitutional violation has been shown. I therefore dissent as to Part IV.B of the majority opinion, which addresses the first prong of Saucier (the constitutional violation prong), and have no reason to reach the second prong of Saucier (the clearly established prong) addressed in Part V of the majority opinion.
I.
The test formulated by the Supreme Court in Saucier v. Katz required a two-pronged “order of battle” assessment of a qualified immunity claim. See 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). After Saucier was rendered in 2001, a reviewing court was obliged to assess the two prongs in sequence, asking first whether the plaintiff had sufficiently established a constitutional violation. If the court’s answer on the first prong was “no,” then it could not proceed to or address the second prong. But if the answer was “yes,” then the court was obliged to decide whether the violation was of a clearly established constitutional right. In 2009, however, in Pearson v. Callahan, the Supreme Court unanimously receded from Saucier's mandatory “order of battle,” deciding that a reviewing court was no longer required to address the two prongs of the Saucier analysis in sequence, but could exercise its “sound discretion” to decide the proper order of assessment. See 555 U.S. 223, 129 S.Ct. 808, 813, 818, 172 L.Ed.2d 565 (2009).
The Pearson rule was in large measure predicated on the Court’s recognition that “[a]dherence to Saucier’s two-step protocol departs from the general rule of constitutional avoidance.” 129 S.Ct. at 821 (citing, inter alia, Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring) (“The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.”)). The Pearson rule, however, also responded to another substantial and valid concern that arose from Saucier’s mandatory sequence protocol — that a defendant could suffer an adverse decision on the constitutional violation prong, prevail on the clearly established prong (and thus secure a favorable judgment), but yet be unable to seek and secure appellate review on the adverse constitutional violation ruling. Id. at 820.
A.
In this case, the majority’s ruling on Saucier’s first prong — the constitutional violation question addressed in Part IV.B — is patently incorrect. Before elaborating, however, I must emphasize and address a more fundamental flaw in the majority’s resolution of this appeal. Put simply, the majority’s ruling on Saucier’s first prong constitutes unnecessary dicta on a constitutional question, contravening the principles spelled out in Pearson. Indeed, the majority recognizes in Part V of its opinion (under Saucier’s second prong) that the constitutional right it identifies in Part IV.B is not clearly established. Under the Pearson rule, therefore, the majority should not have addressed the merits of the constitutional violation issue (under *557 Saucier’s first prong) absent some good reason, such as a compelling need to “pro-motet] the development of constitutional precedent.” 129 S.Ct. at 818. In my view, no such compelling need or other good reason is present here. Thus, the proper course for the majority was simply to assume that a constitutional violation had occurred, and then proceed to address the “clearly established” prong of Saucier, granting qualified immunity and summary judgment on the basis of its Part V ruling. In proceeding as it does, however, the majority has departed from the post-Pearson settled practice. See Walker v. Prince George’s Cnty., 575 F.3d 426, 429 (4th Cir. 2009) (O’Connor, J.) (“Here, we think it is plain that [the] constitutional right ... is not clearly established. We thus decline to invest a substantial expenditure of scarce judicial resources by engaging in the essentially academic exercise of determining whether that right exists at all.”).[1]
To make matters worse, the majority’s unwarranted constitutional discussion in Part IV.B will deny UMBC any meaningful opportunity to seek or secure appellate review of the adverse constitutional violation ruling made by the majority. As the Supreme Court explained in Pearson, the “procedural tangle” created by the Saucier rule “ar[ises] from the Court’s settled refusal to entertain an appeal by a party on an issue as to which he prevailed below, a practice that insulates from review adverse merits decisions that are locked inside favorable qualified immunity rulings.” Pearson, 129 S.Ct. at 820 n. 2. As Justice Alito explained for the unanimous Pearson Court, “the ‘prevailing’ defendant [here, UMBC] faces an unenviable choice: comply with the lower court’s advisory dictum, without an opportunity to seek appellate or certiorari review, or defy the views of the lower court, adhere to practices that have been declared illegal, and thus invite new suits and potential punitive damages.” Id. at 820 (emphasis added).
B.
The majority’s Part IV.B assessment of the constitutional violation question is not only “advisory dictum,” see Pearson, 129 S.Ct. at 820, but also (as previously noted) patently incorrect. Simply put, the relevant facts fail to show a constitutional violation, and I would therefore resolve this case on Saucier’s first prong only. Unlike the majority’s approach, such a resolution would not result in the “procedural tangle” created by Saucier, where the constitutional violation ruling is “insulate[d] from review” by the determination that the asserted constitutional right was not clearly established. See Pearson, 129 S.Ct. at 820 n. 2.
Turning to the merits of the majority’s ruling on the constitutional violation issue, the six words on which these plaintiffs rely are much too thin a supporting reed for their as-applied First Amendment challenge. Indeed, that challenge hinges on a single line in an electronic Google Desktop notice, reminding Mr. Tkacik, UMBC’s in-house counsel, of a meeting scheduled with Mr. Vernet, the student president of Rock for Life, on April 27, 2007. That line contains only these six words: “re: controversial exhibit; Rock for Life.” J.A. 1622. I reject the view that these words provide sufficient support for a First Amendment violation.
As the district court correctly recognized, “reference to the exhibit as contro *558 versial arose from Plaintiffs’ letter alerting Defendants to the controversial nature of the display and the need for security.” Rock for Life-UMBC v. Hrabowski, 643 F.Supp.2d 729, 746 (D.Md.2009). The letter to which Judge Motz referred was first delivered by the plaintiffs to the UMBC police department on April 19, 2007, and was faxed to Mr. Tkacik in advance of the April 27 meeting.[2] The plaintiffs’ letter asserted that, “because [the Center for Bio-Ethical Reform, one of Rock for Life’s ‘supporting organizations’] suffered numerous unprovoked physical attacks from pro-abortion students on the first few campuses it visited, [it] now transports] and employ[s][its] own crowd-control barricades.” J.A. 821. Put simply, I wholeheartedly agree with Judge Motz that the “Defendants should not be faulted for taking seriously the concerns raised by Plaintiffs.” Rock for Life-UMBC, 643 F.Supp.2d at 746-47.
By dismissing as irrelevant the fact that it was the plaintiffs who first raised the security issue, the majority has also created something akin to a “reverse heckler’s veto.” Under the Part V ruling, an educational institution has no choice but to address a student group’s security concerns.[3] But in addressing those concerns, under the Part IV.B ruling the institution risks being seen as engaging in a content-based speech restriction — inevitably creating a jury question when the institution asserts an alternative content-neutral reason for its conduct. The educational institution is thereby faced with a Hobson’s choice: (1) violate the First Amendment by not addressing a student group’s security concerns; or (2) lose any chance of prevailing on summary judgment by addressing such concerns. By preventing an educational institution from prevailing on summary judgment, the majority’s rule tramples on the settled principle that the issue of qualified immunity should be resolved “at the earliest possible stage of litigation.” Pearson, 129 S.Ct. at 815. This result also inappropriately impinges on an educational institution’s manifest interest in the security of its students. See Healy v. James, 408 U.S. 169, 184, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) (“[A] college has a legitimate interest in preventing disruption on the campus.”).
II.
Consistent with the foregoing, I agree with the majority that we should award qualified immunity to the defendants on the as-applied First Amendment challenge to UMBC’s policy on facilities use, but I would get there by a different route— namely, by concluding that a First Amendment violation has not been shown. Because there was no constitutional violation, I would rely solely on Saucier’s first prong and award qualified immunity to the defendants on that basis.

. Cf. Doe ex rel. Johnson v. S.C. Dep’t of Soc. Servs., 597 F.3d 163, 169-70 (4th Cir.2010) (“Because we believe this case will clarify and elaborate upon our prior jurisprudence in important and necessary ways, we will first address [plaintiffs'] constitutional rights ... pri- or to addressing whether any such rights were clearly established at the time of the alleged wrongdoing.”)

. In this regard, the majority recognizes only that the letter was given to Mr. Tkacilc at the April 27, 2007 meeting. See ante at 6. There is, however, more to the story. Although Tkacik may have been provided with an additional copy of the letter at the April 27 meeting, the record reflects that he received the letter beforehand. Specifically, the letter was provided to the UMBC police department on April 19, see J.A. 821, 1148, and it was faxed to Tkacik by the police department on either April 24 or April 26, see id. at 1454, 1457.

. Pursuant to Part V of the majority opinion, an educational institution in this Circuit is now "required by the First Amendment to address th[e] additional safety concerns by providing a security presence ... or watching the event closely to determine whether security [is] truly necessary.” Ante at 34.