STEPHEN TAYLOR ALT v. JAMES E. PARKER, M.D., PETER IRIGARAY, M.D., AND B. GENE BARRETT

No. 9218SC909

(Filed 19 October 1993)

1. **Malicious Prosecution § 17 (NCI4th)— AIDS patient spitting at doctor—assault charges—conviction of lesser included offense—not termination in plaintiff's favor**

   The trial court did not err by granting summary judgment for defendants on a malicious prosecution claim where plaintiff, an HIV positive patient at a state mental hospital, became upset and threw his dinner tray against the wall of the ward where he was staying; a technician reported plaintiff's behavior to a nurse, who ordered that plaintiff be placed in seclusion and restraints and called defendant Parker, a doctor; Dr. Parker authorized the use of seclusion and restraint for up to eight hours, until plaintiff could contract not to harm himself or others; plaintiff was monitored at fifteen-minute intervals and was given toileting privileges, which he refused; Dr. Parker visited plaintiff but was unable to talk with him because plaintiff was shouting and cursing at him; Dr. Parker authorized further restraint; plaintiff continued to be verbally abusive to the nurses and technicians attending him through the night; public safety officers were called to assist six technicians in

cleaning plaintiff and changing his clothes and bedding; Parker went to see plaintiff the next morning; plaintiff spat upon Parker and a social worker accompanying him; Parker subsequently contacted the Butner police and plaintiff was arrested and indicted for assault with a deadly weapon with intent to kill; the charge of assault with a deadly weapon with intent to kill was dismissed; and plaintiff pleaded guilty to three charges of simple assault. For purposes of a claim for malicious prosecution, conviction of a lesser included offense of the charge initiated by the defendant is not a termination in the plaintiff's favor.

**Am Jur 2d, Malicious Prosecution §§ 139-190.**

2. **False Imprisonment § 8 (NCI4th)— restraint at mental institution — professional judgment and proper procedures — evidence insufficient**

Plaintiff's forecast of evidence on a false imprisonment claim arising from the involuntary restraint of plaintiff in Butner Hospital was insufficient to create a genuine issue of material fact as to whether defendants followed the requisite procedures or whether the decision to restrain plaintiff was an exercise of professional judgment. Persons who are responsible for the treatment of clients in state institutions are entitled to a qualified privilege under N.C.G.S. § 122C-210.1 (1989); so long as the requisite procedures were followed and the decision to restrain the plaintiff was an exercise of professional judgment, the defendants are not liable to the plaintiff for their actions. Plaintiff's contentions that procedures were not followed in that his behavior was under control and that lesser measures were not considered were rejected. Plaintiff's contention that defendant Parker's determinations were so far removed from professional standards as not to be an exercise of professional judgment was based primarily on the deposition testimony of an expert, which represented only another professionally acceptable choice.

**Am Jur 2d, False Imprisonment §§ 33-37.**

**False imprisonment in connection with confinement in nursing home or hospital. 4 ALR4th 449.**

ALT v. PARKER

[112 N.C. App. 307 (1993)]

**3. State § 4.2 (NCI3d) — patient in mental hospital restrained — claim for deprivation of due process against doctors — no right to recover**

The trial court did not err by granting summary judgment for defendants on a claim for deprivation of due process rights arising from his involuntary restraint while in a state mental hospital. Plaintiff had no cause of action in this case against defendants in their individual capacities; North Carolina does not recognize a direct cause of action for monetary damages against a state official in his individual capacity who allegedly violated a plaintiff's state constitutional rights. Although one whose state constitutional rights have been offended has a direct action against governmental defendants who allegedly violated those rights in their official capacities in the absence of an adequate state remedy, plaintiff's claim for deprivation of due process is an attempt to vindicate his right to be free from restraint, which is the same interest protected by his common law claim for false imprisonment. Furthermore, plaintiff had another avenue available to him in the administrative grievance procedure provided for in the DHR Rules.

**Am Jur 2d, Public Officers and Employees § 366.**

Appeal by plaintiff from order entered 10 June 1992 by Judge William H. Freeman in Guilford County Superior Court. Heard in the Court of Appeals 1 September 1993.

Plaintiff, who was a voluntarily admitted patient at a state mental hospital and who is HIV positive, sued the defendants, doctors and officials at the hospital, both personally and in their official capacities, for alleged violations of his rights under the United States Constitution, the North Carolina Constitution and the North Carolina Client's Rights Act, N.C. Gen. Stat. §§ 122C-51 to -67 (1989 and Supp. 1992), and for false imprisonment and malicious prosecution. The suit was removed to federal court, but was remanded to the Guilford County Superior Court after all of the federal claims were dismissed. Defendants filed a motion for summary judgment as to all the claims, which was granted on 10 June 1992. From this order, plaintiff appeals.

**ALT v. PARKER**

[112 N.C. App. 307 (1993)]

*Carolina Legal Assistance, by Deborah Greenblatt, for plaintiff-appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Michelle B. McPherson, for defendant-appellees.*

McCRODDEN, Judge.

Plaintiff argues that the trial court erroneously entered summary judgment on his three remaining claims, malicious prosecution, false imprisonment, and deprivation of due process, because he presented evidence that created a genuine issue of material fact as to each of these claims. For the following reasons, we find that the trial court properly entered summary judgment as to each of plaintiff's claims.

Under Rule 56 of the N.C. Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). Defendants were thus entitled to summary judgment if they could establish either the nonexistence of an essential element of plaintiff's claim or show that plaintiff could not produce evidence of an essential element of his claim. *Mitchell v. Golden,* 107 N.C. App. 413, 417, 420 S.E.2d 482, 484 (1992), *aff'd,* 330 N.C. 570, 429 S.E.2d 348 (1993).

The record discloses the following. On 20 November 1989, plaintiff was involuntarily admitted to the John Umstead Hospital (the Hospital) in Butner, North Carolina, a state psychiatric hospital, after he claimed to have taken an overdose of Tylenol. Defendant Dr. James Parker (Parker) was assigned to be plaintiff's treating psychiatrist and to coordinate all of plaintiff's medical and psychiatric treatment. During the course of plaintiff's medical treatment it was discovered that plaintiff was infected with the Human Immunodeficiency Virus.

In January 1990, at plaintiff's request, he was voluntarily admitted to the Hospital to obtain treatment for addiction to alcohol and his involuntary commitment was discharged. As part of his treatment for substance abuse, plaintiff received vocational rehabilitation counseling from Carol High (High), a social worker assigned to the Hospital. Plaintiff's treatment team, including High, attempted

to find suitable employment and housing for plaintiff. They eventually found suitable housing and set up several job interviews for plaintiff. On 22 February 1990, plaintiff refused to attend a job interview because he did not like the hospital employee who had been assigned to transport him to the interview. After learning of plaintiff's refusal to attend the interview, Parker and High requested a meeting with plaintiff to discuss his plans for discharge and to inform him of some test results. Plaintiff was quite upset from the outset because he did not wish High to be present at the meeting. During this meeting, Parker informed plaintiff that results of certain lab tests indicated that his HIV infection might be symptomatic. Plaintiff would not discuss his refusal to attend the job interview and demanded that he be released. Parker told plaintiff that his cooperation was essential to his treatment and that if he would not cooperate he would be discharged. After the meeting Parker and High made plans to discharge plaintiff on the following day. Parker wrote discharge orders at approximately 5:00 p.m. High visited plaintiff again and presented him with a copy of his post-institutional plan, which plaintiff tore up and threw on the floor.

Around 5:25 p.m., plaintiff threw his dinner tray against the wall of the ward in which he was staying. An on-duty health care technician reported plaintiff's behavior to Carolyn DeBerry, a registered nurse, who then ordered that plaintiff be placed in seclusion and restraints. DeBerry then called Parker who was at that point working in the hospital admissions office. DeBerry described plaintiff's actions to Parker, who then authorized the use of seclusion and restraints for up to eight hours, until plaintiff could contract not to harm himself or others. Plaintiff remained in four-point leather restraints throughout the night. He was monitored at fifteen-minute intervals and was given regular toileting privileges, which he refused.

At 11:40 p.m., when he had finished his work at the admissions desk, Parker visited plaintiff in the seclusion room. Parker was unable to talk with plaintiff about his earlier behavior or his release because plaintiff was shouting and cursing at him. As a result of plaintiff's refusal to contract not to harm himself or others, Parker authorized another eight-hour interval of restraint, under the same condition for release. Through the night plaintiff continued to be verbally abusive to the nurses and health care technicians attending to him, and he struggled against the restraints.

Although he had urinated and defecated on himself, he refused to take a shower, insisting that he wanted the patient advocate to see him in that state. He threatened to spit on and throw feces on anyone who attempted to clean him. Finally, the nurse on duty had to call Butner public safety officers to assist six health care technicians in cleaning plaintiff and changing his clothes and bedding. Plaintiff violently resisted these efforts.

At approximately 9:30 a.m. on 23 February 1990, Parker and High went to see plaintiff again. Plaintiff said that he would not speak to Parker while High was present. Parker insisted that High needed to be present since she was a member of the treatment team. Plaintiff then spat upon Parker and High. Some of plaintiff's sputum hit Parker in the face and went into his eyes. Parker then left the plaintiff and placed a telephone call to the Center for Disease Control. He was informed that there had never been a documented case of transmission of HIV through saliva. After discussing the matter with High and his supervisor, Dr. Joseph McEvoy, Parker then contacted the Butner police. An officer came to the Hospital and interviewed Parker. Afterward, the officer took Parker to a magistrate, to whom he related the events of that morning. The magistrate issued a warrant for plaintiff's arrest for assault with a deadly weapon with intent to kill. Plaintiff was subsequently arrested and taken into custody.

In April 1990, a Granville County grand jury returned a true bill of indictment of plaintiff on the charge of assault with a deadly weapon with intent to kill. On 18 April 1990, upon a motion of habeas corpus, plaintiff appeared before Judge Howard Manning in Granville County Superior Court. Judge Manning determined that the plaintiff's saliva was not a deadly weapon, as a matter of law, and dismissed the charge of assault with a deadly weapon with intent to kill. Then, pursuant to a plea arrangement, plaintiff pleaded guilty to three charges of simple assault. The court sentenced plaintiff to time he had already served. Plaintiff filed this action on 15 June 1990.

[1] Plaintiff first argues that there was a genuine issue of material fact as to each element of his claim for malicious prosecution. The elements of a claim for malicious prosecution are (1) initiation by the defendant of an earlier proceeding; (2) lack of probable cause for such initiation; (3) malice, either actual or implied; and (4) ter-

mination of the earlier proceeding in favor of the plaintiff. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984).

It is undisputed that defendant Parker initiated a criminal proceeding against plaintiff when he swore out the warrant for assault with a deadly weapon. We do not address the questions of whether Parker had probable cause or whether he acted with malice because we find that plaintiff's claim falls short on the fourth element.

"Ordinarily the termination of the proceeding must result in a discharge of the plaintiff so that new process must issue in order to revive the proceeding against him." *Id.* at 400, 323 S.E.2d at 13. Plaintiff's indictment for assault with a deadly weapon with intent to kill included all lesser offenses. Plainly, simple assault is a lesser included offense of assault with a deadly weapon with intent to kill, N.C. Gen. Stat. §§ 14-32, -33 (1986 and Supp. 1992), and no new process need be issued for a conviction on a lesser included offense. N.C. Gen. Stat. § 15-170 (1983). Pursuant to the plea bargain, plaintiff entered a plea of guilty to assault. We hold that, for purposes of a claim for malicious prosecution, conviction of a lesser included offense of the charge initiated by the defendant is not a termination in the plaintiff's favor. Consequently, we overrule plaintiff's first argument.

[2] Plaintiff next argues that there was a genuine issue of material fact as to his claim for false imprisonment. The essence of the tort of false imprisonment is illegal restraint of a person against his will. *Myrick v. Cooley*, 91 N.C. App. 209, 212, 371 S.E.2d 492, 494, *disc. review denied*, 323 N.C. 477, 373 S.E.2d 865 (1988). In this case it is clear that plaintiff was lawfully restrained. A client in a state institution is not entitled to absolute freedom from restraint; rather, the client's freedom from restraint must be balanced against the safety of other clients and the client himself. *See Youngberg v. Romeo*, 457 U.S. 307, 73 L.Ed.2d 28 (1982).

Persons who are responsible for the treatment of clients in state institutions are entitled to a qualified privilege under N.C. Gen. Stat. § 122C-210.1 (1989), which provides that:

No facility or any of its officials, staff, or employees, or any physician or other individual who is responsible for the examination, management, supervision, treatment, or release of a client and who follows accepted professional judgment, prac-

tice, and standards is civilly liable, personally or otherwise, for actions arising from these responsibilities or for actions of the client.

In *Youngberg*, the United States Supreme Court addressed the issue of what 14th Amendment liberty interests a client in a state hospital retained. The Court found that a client is entitled to some, but not complete, freedom from bodily restraint, *id.* at 319-20, 73 L.Ed.2d at 39, and stated that in deciding whether to restrain clients, the administrators and professional staff of state hospitals "should not be required to make each decision in the shadow of an action for damages." *Id.* at 325, 73 L.Ed.2d at 43. The Court adopted the standard of review that had been postulated in a concurring opinion of the lower court: "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321, 73 L.Ed.2d at 41.

Since we are today concerned with the provisions of the North Carolina Constitution, the U.S. Supreme Court's opinion has no direct precedential weight. Nonetheless, we believe that its reasoning is sound and coincides with our reading of N.C.G.S. § 122C-210.1, and we adopt the standard enunciated in *Youngberg*. Thus, in this case, so long as the requisite procedures were followed and the decision to restrain the plaintiff was an exercise of professional judgment, the defendants are not liable to the plaintiff for their actions. Plaintiff alleges both that Parker failed to follow the established procedures and that he did not exercise his professional judgment in deciding to restrain plaintiff.

In this instance, the applicable procedures and regulations come from three sources, the General Statutes, the North Carolina Administrative Code and the official policies of the Hospital. First, "[p]hysical restraint or seclusion of a client shall be employed only when there is imminent danger of abuse or injury to himself or others, when substantial property damage is occurring, or when the restraint or seclusion is necessary as a measure of therapeutic treatment." N.C.G.S. § 122C-60.

The Department of Human Resources rules (DHR Rules), adopted pursuant to N.C.G.S. § 122C-60(b), provide that a client in restraint or seclusion shall be released when he no longer demonstrates the behavior which precipitated the restraint. 10

N.C.A.C. 14J .0204(k) (March 1990). The DHR Rules also require state hospitals to develop procedures and policies for the use of restraint or seclusion that provide, at a minimum:

(1) [a] process for identifying and privileging state facility employees who are authorized to use such interventions;

(2) provisions that a qualified or responsible professional shall:

(A) review the use of the intervention as soon as possible but at least within one hour of the initiation of its use;

(B) verify the inadequacy of less restrictive intervention techniques; and

(C) document in the client record evidence of approval or disapproval of continued use.

10 N.C.A.C. 14J .0204(d) (March 1990). At the relevant time, the Hospital had in place procedures which met all of the requirements of the DHR Rules, and further required that a registered nurse who orders seclusion or restraint must immediately obtain an order from the client's physician. An order for seclusion or restraint must indicate the reason for restraint, the estimated duration of the restraint and the behavioral criteria for release.

Plaintiff has argued that Parker failed to follow the procedures by failing to verify the inadequacy of lesser measures. However, the DHR Rules require that a qualified professional verify the inadequacy. Nurse DeBerry is a qualified professional within the definition of that term contained in the DHR Rules. 10 N.C.A.C. 14G .0102(b)(32) (June 1990). Nurse DeBerry testified that she did not discuss lesser measures with Parker because she was unable to reason with the plaintiff and he was out of control. Thus, she had verified to her own satisfaction that lesser measures were inadequate. Furthermore, Parker testified that if DeBerry had suggested lesser measures, he would have rejected such a suggestion because of plaintiff's history of suicide threats and attempts. We reject plaintiff's contention that lesser measures were not considered in his case.

Plaintiff also argues that the procedures were violated because his behavior was under control and he should have been released. Since we deem the condition set on plaintiff's release to be imminently reasonable, we reject this contention. Plaintiff could not, or would not, contract not to harm himself. Given plaintiff's history

of suicide threats and attempts, we see no reason to find that Parker should have determined that plaintiff had gained behavioral control when he refused to contract not to harm himself. In any event, the determinations of whether to restrain a client and whether a client has gained behavioral control sufficient to be released are precisely the types of determinations which should not be subject to second guessing by judges or juries and to which the qualified privilege of N.C.G.S. § 122C-210.1 applies.

Plaintiff, however, argues further that the determinations made by Parker were not exercises of professional judgment, *i.e.*, they were so far removed from the professional standards as not to be an exercise of professional judgment. As support for this argument, he relies primarily on the deposition testimony of an expert witness, who stated that defendant Parker did not exercise professional judgment for a number of reasons: first, plaintiff was placed in seclusion and restraint for reasons other than being a danger to himself or others; second, alternative measures were not considered or used; third, plaintiff was allowed to remain in seclusion and restraint for an extended period of time; and finally Parker relied on second-hand information from Nurse DeBerry in authorizing the use of restraint and did not visit plaintiff for at least six hours.

Taking these assertions in turn we find them to be meritless. First, from the scant excerpts of the deposition contained in the record on appeal, we cannot determine what the expert thought the other reasons for the restraint might be. Second, while less drastic measures were not actually discussed by Dr. Parker and Nurse DeBerry, it is clear that such discussions were rendered moot by the inability of the plaintiff to listen to reason. Third, the expert's opinion that plaintiff was allowed to remain in restraints for too long is vitiated by the fact that hospital procedure allows restraint up to eight hours, after which time a new order must be issued. Finally, Hospital policy clearly allows for an order of restraint to be based on second-hand information and also only requires that the physician visit a restrained client within eight hours of the restraint, which Parker certainly did. The Hospital is accredited by the Joint Commission on Accreditation of Hospitals. Such accreditation is *prima facie* proof of constitutionally permissible conditions. *Thomas S. v. Brooks*, 902 F.2d 250, 253, *cert. denied*, 498 U.S. 451, 112 L.Ed.2d 335 (4th Cir. 1990). We believe that, at best, the testimony of plaintiff's expert represents only another "professionally acceptable choice."

We find that the forecast of evidence provided by the plaintiff was insufficient to create a genuine issue of material fact as to whether defendants followed the requisite procedures or whether Parker's decision to restrain plaintiff was an exercise of professional judgment. Thus, the restraint of plaintiff was lawful and the plaintiff's claim for false imprisonment is fatally deficient. Accordingly, we overrule plaintiff's second argument.

[3] Plaintiff also contends that the trial court erred in dismissing the claim of deprivation of due process rights against the doctors. Plaintiff argues that he was deprived of the liberty guaranteed by the "law of the land" when he was placed in restraints and seclusion. N.C. Const. art. I, § 19.

As a threshold question, in order to bring a claim against state officials for constitutional violations a plaintiff must show that he has a right to recover directly from the officials. In this case it is clear that plaintiff had no right to recover against the defendants in either their individual or official capacities.

North Carolina does not recognize a direct cause of action for monetary damages against a state official in his individual capacity, who allegedly violated a plaintiff's state constitutional rights. *Corum v. University of North Carolina*, 330 N.C. 761, 787, 413 S.E.2d 276, 292, *cert. denied*, 506 U.S. - - -, 121 L.Ed.2d 431 (1992). The state constitution is meant to protect the rights of individuals from infringement by the State, not to protect those rights as against other individuals. *Id.* at 788, 413 S.E.2d at 293. Plaintiff had no cause of action in this case against defendants in their individual capacity.

However, one whose state constitutional rights have been offended has a direct action against governmental defendants who allegedly violated those rights, in their official capacities, "[i]n the absence of an adequate state remedy." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289. In *Corum*, the interest that was at stake was the plaintiff's right to free speech, under the Declaration of Rights of Article 1 of the North Carolina Constitution. Our Supreme Court held that the plaintiff had an action for the violation of that right, since there was no other adequate redress. In this case however, plaintiff's claim for deprivation of due process is an attempt to vindicate his right to be free from restraint, which is the same interest protected by his common law claim for false imprisonment. Plaintiff's claim for false imprisonment, if successful, would have

compensated him for the same injury he claims in his direct constitutional action.

Furthermore, in this case plaintiff had another avenue available to him, to wit, the administrative grievance procedure provided for in the DHR Rules. Under those rules plaintiff could have filed a grievance with the Department of Mental Health. Since there is no evidence that plaintiff ever filed a grievance action and received an unfavorable result and since plaintiff had the common law tort action for false imprisonment available to him, we cannot say that plaintiff is without adequate state remedy. Thus, because plaintiff had adequate state remedies for his constitutional claim, we conclude that he did not have a direct cause of action against defendants for the alleged violation of his liberty rights. Accordingly, we overrule plaintiff's constitutional argument.

Plaintiff has also argued that the trial court erred in dismissing his claim against defendants Irigaray and Barrett for injunctive relief. As it is undisputed that plaintiff has been discharged from the Hospital, plaintiff's claim is obviously moot, and we summarily reject this argument.

For the foregoing reasons we find that the trial court properly entered summary judgment against plaintiff on each of his claims for relief. The action of the trial court is affirmed.

Affirmed.

Judges WELLS and ORR concur.