DINAH BORYLA-LETT, INDIVIDUALLY AND AS ADM. OF THE ESTATE OF, AMANDA BORYLA A/K/A AMANDA HRASAR, AND JEFFREY LETT, PLAINTIFFS V. PSYCHIATRIC SOLUTIONS OF NORTH CAROLINA, INC., D/B/A HOLLY HILL HOSPITAL, JOHN T. CLAPACS, NORTH RALEIGH PSYCHIATRY, P.A., AND SCOTT JACKSON, P.A., DEFENDANTS

No. COA08-1357

(Filed 3 November 2009)

**1. Immunity— mental health admissions—summary judgment**

Qualified immunity is sufficient to grant summary judgment for defendant, and the qualified immunity afforded by N.C.G.S. § 122C-210.1 applies to all of the defendants in this medical malpractice action arising from decedent not being admitted to a mental health hospital and subsequently committing suicide.

**2. Immunity— mental health admissions—necessity of gross or intentional negligence**

The holding in *Snyder v. Learning Servs. Corp.*, 187 N.C. App. 480, that a plaintiff must allege gross or intentional negligence to overcome the immunity of N.C.G.S. § 122C-210.1 once it attaches, is neither dicta nor erroneous.

**3. Immunity— mental health admissions—standards required—statutory immunity**

In a case involving a decedent who committed suicide after not being admitted to a mental health facility, the qualified immunity available under N.C.G.S. § 122C-210.1 attaches if defendants followed accepted professional judgment, practice, and standards. Plaintiffs did not argue that defendants North Raleigh Psychiatry and Dr. Clapacs violated those standards.

**4. Immunity— mental health admissions—use of information—drug test**

In a case involving a decedent who committed suicide after not being admitted to a mental health facility, defendants Jackson and Holly Hill did not lose immunity under N.C.G.S. § 122C-210.1 by violating accepted professional judgment, practice, and standards.

**5. Immunity— mental health admissions—needs assessment coordinator—professional judgment**

The immunity provided by N.C.G.S. § 122C-210.1 applied in the case of a decedent who committed suicide after not being admitted to a mental hospital where, despite evidence to the contrary, the determinations of the needs assessment coordinator were the result of his professional judgment and did not represent a substantial departure from accepted professional judgment.

**6. Immunity— mental health admissions—failure to page therapist**

There was no failure to exercise professional judgment and thus no loss of qualified statutory immunity by not admitting a patient to a mental hospital where the patient's therapist was not paged at 2:15 a.m.

**7. Immunity— mental health admissions—failure to obtain second signature**

In a case involving a decedent who committed suicide after not being admitted to a mental health facility, the attachment of qualified immunity pursuant to N.C.G.S. § 122C-210.1 was not prevented by the failure to obtain a second employee's signature on the evaluation sheet.

Appeal by plaintiffs from orders entered 4 April 2008 and 27 May 2008 by Judges Donald W. Stephens and Orlando Hudson, respec-

tively, in Wake County Superior Court. Heard in the Court of Appeals 7 April 2009.

*Martin A. Rosenberg, for plaintiffs-appellants.*

*Crawford & Crawford, LLP, by Renee B. Crawford, Robert O. Crawford, III, and Heather J. Williams, for John T. Clapacs and North Raleigh Psychiatry, P.A., defendants-appellees.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by J. Matthew Little and Kathryn Deiter-Maradei, for defendants-appellants.*

JACKSON, Judge.

Dinah Boryla-Lett ("Boryla-Lett") and Jeffrey Lett ("Lett") (collectively, "plaintiffs"), both in their own capacities and on behalf of the estate of Amanda Boryla a/k/a Amanda Hrasar ("Amanda"), appeal the orders dated 4 April 2008 and 27 May 2008 granting summary judgment in favor of John T. Clapacs, M.D. ("Dr. Clapacs"); North Raleigh Psychiatry, P.A. ("North Raleigh"); Psychiatric Solutions of North Carolina, Inc. d/b/a Holly Hill Hospital ("Holly Hill"); and Scott Jackson ("Jackson") (collectively, "defendants"). For the reasons set forth below, we affirm.

On 16 November 2005, at approximately 1:15 a.m., plaintiffs brought their daughter, Amanda, age twenty, to Holly Hill for admission. Holly Hill is a hospital specializing in providing mental health treatment, including patient commitment. Boryla-Lett testified in her deposition that Amanda was planning to commit herself voluntarily when she arrived at Holly Hill with her parents, but then she changed her mind. Plaintiffs expressed their concerns for Amanda's safety and health to Jackson, who was working for Holly Hill at the time performing intake evaluations. They also told him that she had taken a "handful of pills" in the waiting room.

Jackson took Amanda into a private room to evaluate her. Jackson reviewed Amanda's medical record, but he did not thoroughly examine it. Jackson did not perform a drug test on Amanda, nor did he interview her parents. Jackson examined Amanda for approximately thirty minutes. Amanda was described as calm, alert, and sad, but did not appear to be under the influence of drugs or alcohol. Amanda denied suicidal thoughts or plans. Jackson determined that Amanda did not require involuntary commitment to Holly Hill. Jackson requested permission to share Amanda's medical information with her parents and suggested to Amanda that she voluntarily

commit herself. Amanda declined both suggestions. Jackson signed the evaluation himself, but, in violation of Holly Hill's intake and assessment procedures, he did not obtain a second employee's signature. Jackson then called the on-call psychiatrist, Dr. Clapacs, for a second opinion. Based upon the information provided by Jackson, Dr. Clapacs agreed that Amanda was not a candidate for involuntary commitment.

Sometime after 2:15 a.m., Jackson told plaintiffs that Amanda was not a candidate for involuntary commitment, that she had declined voluntary commitment, and that she was to be sent home. Amanda's parents became upset with Jackson and with Amanda, and left Amanda at Holly Hill. Plaintiffs testified that Amanda told them that she wanted to get her own ride home with a friend. Jackson testified that plaintiffs "became upset and . . . left" the hospital, telling Amanda that she was not to return home.

Amanda tried unsuccessfully to get a ride home. At approximately 7:30 a.m., either Jackson or Holly Hill paid for a taxi service to take Amanda home. Amanda returned to an empty house and slept.

The next day, 17 November 2005, after talking with her family and spending time "with friends,"[1] Amanda locked herself in the bathroom at her home and died of a heroin overdose.

On 19 April 2007, plaintiffs filed a medical malpractice complaint. On 31 March 2008, Dr. Clapacs and North Raleigh filed a motion for summary judgment, and on 4 April 2008, the trial court granted their motion. On 14 April 2008, Jackson and Holly Hill moved for summary judgment, which the trial court granted on 27 May 2008. Plaintiffs appeal.

**[1]** Plaintiffs contend that the trial court erred in finding no issue of material fact and granting defendants' motions for summary judgment. We disagree.

As this Court recently explained,

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a mat-

---

1. During the time period when Amanda told her parents that she was out with friends, she ate at a restaurant at one point and was videotaped purchasing heroin at another.

ter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

*Wilkins v. Safran*, 185 N.C. App. 668, 671, 649 S.E.2d 658, 661 (2007) (quoting *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal quotation marks omitted), *aff'd*, 358 N.C. 131, 591 S.E.2d 521 (2004)).

We review a grant of summary judgment *de novo. Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citing *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006)). All evidence must be viewed in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

North Carolina General Statutes, section 122C-210.1 provides:

No facility or any of its officials, staff, or employees, or any physician or other individual who is responsible for the custody, examination, management, supervision, treatment, or release of a client and who follows accepted professional judgment, practice, and standards is civilly liable, personally or otherwise, for actions arising from these responsibilities or for actions of the client. This immunity is in addition to any other legal immunity from liability to which these facilities or individuals may be entitled and applies to actions performed in connection with, or arising out of, the admission or commitment of any individual pursuant to this Article.

N.C. Gen. Stat. § 122C-210.1 (2007). Qualified immunity, if applicable, is sufficient to grant a defendant's motion for summary judgment. *See Bio-Medical Application of North Carolina, Inc. v. N.C. Dep't of Health & Human Servs.*, 179 N.C. App. 483, 487-88, 634 S.E.2d 572, 576 (2006); *see generally Snyder v. Learning Servs. Corp.*, 187 N.C. App. 480, 653 S.E.2d 548 (2007). We hold that the qualified immunity afforded by North Carolina General Statutes, section 122C-210.1

applies to all defendants *sub judice* and, therefore, we affirm the trial court's grant of summary judgment in favor of defendants.

**[2]** Under North Carolina law, '[c]laims based on ordinary negligence do not overcome . . . statutory immunity' pursuant to Section 122C-210.1; a plaintiff must allege gross or intentional negligence. *Cantrell v. United States*, 735 F. Supp. 670, 673 (E.D.N.C. 1988); *see also Pangburn v. Saad*, 73 N.C. App. 336, 347, 326 S.E.2d 365, 372 (1985) ('We therefore conclude that [North Carolina General Statutes, section] 122-24 [the precursor to North Carolina General Statutes, section 122C-210.1] was intended to create a qualified immunity for those state employees it protects, extending only to their ordinary negligent acts. It does not, however, protect a tortfeasor from personal liability for gross negligence and intentional torts.'). Nevertheless, as found by this Court, N[orth Carolina General Statutes, section] 122C-210.1 offers only a qualified privilege, meaning that, 'so long as the requisite procedures were followed and the decision [on how to treat the patient] was an exercise of professional judgment, the defendants are not liable to the plaintiff for their actions.' *Alt v. Parker*, 112 N.C. App. 307, 314, 435 S.E.2d 773, 777 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994).

*Snyder*, 187 N.C. App. at 484, 653 S.E.2d at 551. Plaintiffs argue in their brief that our holding in *Snyder* is "plainly incorrect and, moreover, dicta." We disagree.

This portion of *Snyder* is not dicta because it is essential to the holding of the case. The question presented in *Snyder* was whether the defendants were entitled to immunity, which would have provided them a substantial right upon which they could base an appeal from an interlocutory order. *Snyder*, 187 N.C. App. at 483, 653 S.E.2d at 550. Moreover, we cannot agree that the legal analysis set forth in *Snyder* is erroneous. By reading the remainder of the quotation set forth *supra*, one can see that gross negligence must be alleged to overcome the statutory immunity once it attaches, but that this immunity does not attach until a defendant shows that he or she followed the "requisite procedures [and that] the decision [as to how to treat the patient] was an exercise of professional judgment." *Snyder*, 187 N.C. App. at 484, 653 S.E.2d at 551.

The distinction between negligence and gross negligence is not merely a question of degree of inadvertence or carelessness but one of reckless disregard. *See Yancey v. Lea*, 354 N.C. 48, 53, 550 S.E.2d

155, 158 (2001). The difference is qualitative: "inadvertence" compared to "intentional wrongdoing or deliberate misconduct affecting the safety of others." *Id.* (citing *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971)).

> An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, *i.e.*, a conscious disregard of the safety of others. An act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional.

*Id.* (citing *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971)).

[3] Plaintiffs do not allege in their complaint that defendants acted with gross negligence or willful misconduct. Therefore, defendants' statutory immunity cannot be overcome by plaintiffs' claim of ordinary negligence. *See Snyder*, 187 N.C. App. at 484, 653 S.E.2d at 551. If defendants "follow[ed] accepted professional judgment, practice, and standards," then the qualified immunity defense available pursuant to North Carolina General Statutes, section 122C-210.1 attaches, and it will be a valid affirmative defense upon which a trial court properly may grant summary judgment. *See id.*, and *Wilkins*, 185 N.C. App. at 671, 649 S.E.2d at 661.

We have developed a variety of ways to analyze a breach of "acceptable professional judgment, practice, and standards." In *Youngberg v. Romeo*, 457 U.S. 307, 73 L. Ed. 2d 28 (1982), the United States Supreme Court defined the appropriate standard for evaluating claims based upon the federal constitutional liberty interests retained by individuals committed to state mental institutions. *Youngberg*, 457 U.S. at 321-22, 73 L. Ed. 2d at 41. In *Alt v. Parker*, 112 N.C. App. 307, 435 S.E.2d 773 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994), we adopted the *Youngberg* interpretation of "professional judgment" as an appropriate standard against which to measure section 122C-210.1 immunity claims. *Alt*, 112 N.C. App. at 314, 435 S.E.2d at 777 (explaining that "[t]he [Supreme] Court adopted the standard of review that had been postulated in a concurring opinion of the lower court: 'the Constitution[2] only requires that the courts

---

2. We note that the relevant issue presented in *Alt* concerned the plaintiff's claim for false imprisonment after being restrained by the hospital's staff against the plaintiff's will. *See Alt*, 112 N.C. App. at 313-18, 435 S.E.2d at 776-79. The restraint issue also implicated certain of the plaintiff's liberty interests. *Id.* Notwithstanding, in *Alt*, we set forth our view that the United States Supreme Court's reasoning in *Youngberg* comported with our reading of North Carolina General Statutes, section 122C-210.1. *Alt*,

make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made.' " (quoting *Youngberg*, 457 U.S. at 321, 73 L. Ed. 2d at 41)).

In *Alt*, because the "requisite procedures were followed and the decision [concerning] the plaintiff was an exercise of professional judgment," immunity properly was granted. *Alt*, 112 N.C. App. at 314, 435 S.E.2d at 777. In the facts specific to that case, "the applicable procedures and regulations [came] from three sources, the General Statutes, the North Carolina Administrative Code and the official policies of the Hospital." *Id.*

Courts are required only to "make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg*, 457 U.S. at 321, 73 L. Ed. 2d at 41 (quoting *Romeo v. Youngberg*, 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, J., concurring)). In this way, different opinions as to the proper standard of care or the proper medical action do not, *ipso facto*, defeat a claim of immunity pursuant to section 122C-210.1. Plaintiffs fail to make any argument in their brief that North Raleigh or Dr. Clapacs violated accepted professional judgment, failed to act within their professional judgment, or failed to follow accepted professional standards and procedures. Accordingly, we hold that the statutory immunity provided by North Carolina General Statutes, section 122C-210.1 provides an adequate basis for the trial court's grant of summary judgment in favor of Dr. Clapacs and North Raleigh.

**[4]** Plaintiffs allege multiple ways in which Jackson and Holly Hill failed to follow accepted professional judgment, practice, and standards. They claim first that Jackson violated portions of the Mental Health, Development, Disabilities, and Substance Abuse Act of 1985 ("the Act"). *See* N.C. Gen. Stat. § 122C-211(a) (2007). Plaintiffs cite the Act as requiring that "information provided by family members regarding the individual's need for treatment shall be reviewed in the evaluation" and that "the facility shall give to an individual who is denied admission a referral to another facility or facilities that may be able to provide the treatment needed by the client." *Id.*

---

112 N.C. App. at 314, 458 S.E.2d at 777. Accordingly, we conduct our analysis of the qualified immunity granted by section 122C-210.1 in view of the "professional judgment" requirement set forth in *Youngberg*. *See Youngberg*, 457 U.S. at 321-22, 73 L. Ed. 2d at 41.

Plaintiffs allege that Jackson violated the Act by not asking the parents questions and not referring Amanda to another hospital. However, the statute, as cited by plaintiffs, requires only that any information that is in fact gained is to be considered in the evaluation; it does not require the evaluator to affirmatively seek out such information. *See id.* Plaintiffs do not allege that information was gained and not used. The evidence shows that the only information presented to Jackson was the intake form filled out by Boryla-Lett, which he used in his evaluation of Amanda. Furthermore, plaintiffs' allegations do not suggest that Amanda was "denied admission." She was not. She was offered voluntary admission by Jackson, and she refused. Therefore, plaintiffs' argument is unavailing.

Plaintiffs further contend that Jackson did not perform a drug test on Amanda after allegedly being informed by Boryla-Lett that Amanda had taken a "handful of pills." There is no allegation that Jackson should have known the nature of these pills. Further, Jackson's performance comported with hospital policies against seeking a drug test when the patient denies drug use and no direct evidence of drug use is evident. During Jackson's examination of Amanda, she was calm and alert and did not appear to be using drugs or alcohol. In addition, Jackson interviewed Amanda for at least thirty minutes, and she remained in his presence until approximately 7:30 a.m., during which time he observed no effects suggesting current drug use. We hold that Jackson's decision not to administer a drug test was not a substantial departure from accepted professional judgment, practice, or standards and that, given his observation of Amanda's calm, lucid state during a period of several hours, it was not an arbitrary, unprofessional choice. *See Youngberg*, 457 U.S. at 321-22, 73 L. Ed. 2d at 41.

[5] Next, plaintiffs argue that the information Jackson obtained from plaintiffs in the waiting room was deficient and that Jackson's review of Amanda's record was insufficient. However, Jackson testified that he did review the medical record as thoroughly as his experience deemed necessary. He also testified that he read the intake form filled out by Boryla-Lett, and he determined that the information from the family was sufficient for his review. Notwithstanding plaintiffs' expert witness's testimony that Jackson should have made more use of information available from the family members and the medical records, we hold that Jackson's determinations were the result of his professional judgment and that they do not represent a substantial departure from accepted professional judgment. *See id. See also Alt,*

112 N.C. App. at 314, 435 S.E.2d at 777 (" 'It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made.' ") (quoting *Youngberg*, 457 U.S. at 321, 73 L. Ed. 2d at 41).

**[6]** Plaintiffs further argue that Jackson should have contacted Amanda's treating therapist at 2:15 in the morning. Had Jackson called the therapist's office number, he would have received an automated message, saying that, if immediate attention was necessary, he should call Holly Hill. In fact, the message would have directed him to contact his own division within Holly Hill. Although he could have sought out the therapist's pager number from Amanda, we hold that a failure to demand a pager number from a therapy patient for the purpose of contacting the therapist concerning a patient who seemed calm, alert, and not under the influence of any substances, did not represent a failure to exercise professional judgment. *See Youngberg*, 457 U.S. at 321-22, 73 L. Ed. 2d at 41.

**[7]** Finally, plaintiffs argue that Jackson did not obtain a second employee signature on his evaluation as required by Holly Hill policy. However, this failure to have a second employee sign the form resulted from inadvertence rather than a conscious professional decision.

At his deposition, Jackson testified in relevant part as follows:

Q On [Holly Hill Needs Assessment and Referral, Assessment Policy—Face-to-Face Procedure] Number 5, "After completion of the assessment, consultation will take place with another needs assessment coordinator, noted by a signature on the assessment form below the individual who conducted the assessment. This is to ensure every evaluation have at least two trained professionals reviewing the clinical data." Is that what it says?

A Uh-huh (affirmative).

Q Did we do that in Amanda's case?

A I remember talking the case over with Stephanie [Justice ("Justice")] when I came back in to call Dr. Clapacs. She didn't sign the form, but I remember discussing—but she didn't— that— this doesn't mean that the other person goes in and does another evaluation.

And, actually, that is less important than discussing the case with a psychiatrist because there's usually not a whole—when I've had

people use me or discuss a case with me, you know, I may come up with some idea or I may have a suggestion, but truthfully, they—they—the key piece is reviewing whatever you've found with the doctor of record.

. . . .

Q  Okay. Well, she certainly didn't sign this form.

A  No.

Nonetheless, we do not believe that the obligation to follow accepted professional judgment is obviated by every deviation from the letter of a hospital's self-imposed rules.[3] To hold otherwise would elevate form over substance. Nor does the requirement that one exercise professional judgment provide that a non-material deviation from hospital rules necessarily constitutes a violation of accepted procedure. That is not to say that a hospital's rules are not a relevant factor in determining whether an action was in following professional judgment and standards. *See Alt*, 112 N.C. App. at 314, 435 S.E.2d at 777. However, such rule violations are only one factor to be considered, and are neither required for a revocation of immunity nor necessarily sufficient standing alone to abrogate immunity.

In the case *sub judice*, Holly Hill's procedural rule. at issue requires that

[u]pon completion of the assessment, a consultation will take place with another Needs Assessment Coordinator, noted by a signature on the assessment form below the individual who conducted the assessment. This is to ensure every evaluation have at least two trained professionals reviewing the clinical data.

---

3. We note that, in *Alt*, immunity was granted when the defendants apparently followed all applicable rules, statutes, and standards. *See Alt*, 112 N.C. App. at 314-18, 435 S.E.2d at 777-79. In contrast, we note that, in *Snyder*, immunity was denied when "the investigative report from the North Carolina Division of Facility Services (NCDFS), the licensing and investigative arm for mental health facilities in North Carolina, was submitted with its findings that [the defendant] had failed to adequately supervise Timothy Snyder." *Snyder*, 187 N.C. App. at 484, 653 S.E.2d at 551-52. "NCDFS further concluded that Learning Services was guilty of a Type A violation, one that results in death or serious physical harm, fined Learning Services, and ordered the center to make immediate corrections." *Snyder*, 187 N.C. App. at 484-85, 653 S.E.2d at 552. Because these cases represent the outer bounds between full observance of required conduct and severely deficient performance, we view both as instructive. The instant case falls between the two and therefore requires a fact-specific inquiry to determine whether defendant's actions were sufficient for immunity to attach.

During the time Amanda was present at Holly Hill on 16 November 2005, Jackson and Justice were the two Needs Assessment Coordinators on duty. The uncontroverted testimony of both Jackson and Justice demonstrates that Jackson consulted with Justice, as is required by the Holly Hill procedure. Justice explained that "[Jackson] went over the basic information [Amanda] gave him for the assessment and we just discussed the appropriateness of what kind of treatment she might . . . need." She continued by noting that "[t]ypically, we do not see the patient directly. We can provide collateral. We come in—various counselor's, whoever's working usually runs the major ideas of what the assessment was about by whomever is sitting in there."

We acknowledge that it is uncontroverted that Justice did not sign the intake evaluation to note the consultation. Although the stated purpose for the signature is to "ensure every evaluation have at least two trained professionals reviewing the clinical data," Justice testified that she did not review any of Amanda's clinical data, only verbal data provided by Jackson.

Notwithstanding, on the facts in the case *sub judice*, Jackson was a trained and experienced Needs Assessment Coordinator, and he was Amanda's primary intake counselor. He personally observed her appearance and demeanor during his half-hour interview with her and over the course of several early-morning hours Amanda spent in Holly Hill's waiting area. In view of his interactions with and observations of Amanda, his review of her intake materials, and the information volunteered by her parents, further informed by his training and experience, Jackson performed an adequate consultation with another Needs Assessment Coordinator, Justice. Justice, based upon, her conversation with Jackson and informed by her independent training and experience, confirmed Jackson's judgment. Jackson then consulted with Dr. Clapacs, who also confirmed Jackson's judgment. Although Justice failed to sign her name as evidence of her endorsement of Jackson's judgment, we cannot say this is a material deviation from the hospital's rules regarding a face-to-face needs assessment. Amanda was an adult, who appeared lucid during the time she spent at Holly Hill, and she declined both her parents' urging and Jackson's offer to admit herself voluntarily into Holly Hill for treatment.

Accordingly, we hold that the failure to obtain a second employee's signature on the evaluation sheet was not a sufficiently material departure from the hospital's rules to demonstrate a failure

to use and follow the requisite professional judgment, practice, and standards so as to prevent attachment of qualified immunity pursuant to North Carolina General Statutes, section 122C-210.1.

For the forgoing reasons, we hold that defendants are immune within the meaning of section 122C-210.1 of the North Carolina General Statutes, and we affirm the trial court's grant of summary judgment in defendants' favor.

Affirmed.

Judges HUNTER, Jr., Robert N. and ERVIN concur.