IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-282

Filed 7 November 2023

Rowan County, No. 18-CVS-355

TRACI C. KIRKMAN, AS ADMINISTRATOR OF THE ESTATE OF CHAD WAYNE
KIRKMAN, DECEASED, Plaintiff,

v.

ROWAN REGIONAL MEDICAL CENTER, INC., D/B/A NOVANT HEALTH
ROWAN MEDICAL CENTER; AND MINDY P. FRANCE, LPC., Defendants.

Appeal by plaintiff from orders entered 7 November 2022 by Judge Eric C.
Morgan in Rowan County Superior Court. Heard in the Court of Appeals 3 October
2023.

> *The Law Offices of Wade Byrd, P.A., by Wade E. Byrd, for plaintiff-appellant.*
>
> *Batten Lee PLLC, by Jaye E. Bingham-Hinch and Leigh Ann Smith, for defendant-appellees.*

THOMPSON, Judge.

Plaintiff, as administrator of her deceased husband's estate, appeals from
orders entered by the superior court on 7 November 2022 granting defendants' motion
for summary judgment and denying plaintiff's motion to amend her complaint.
Plaintiff contends the trial court erred in (1) granting defendants' motion for
summary judgment based on immunity under N.C. Gen. Stat. § 122C-210.1, (2)
denying plaintiff's motion for leave to amend the complaint, and (3) granting

defendants' motion for summary judgment based on proximate causation. After careful consideration, we affirm the trial court.

## I. Factual Background and Procedural History

In 2016, decedent Chad Wayne Kirkman was a nursing student at Rowan-Cabarrus Community College. On 13 February 2016, Kirkman and other nursing students were at Rowan Regional Medical Center (RRMC) for clinical instruction when in an unprovoked outburst, Kirkman accused his nursing instructor, Melissa Zimmerman, of being the devil. Kirkman stated, "I have been hunting this mother f****r for years," and, after pulling off a cross he had been wearing around his neck, Kirkman held the cross in Zimmerman's face and touched her arm with it, indicating he wanted her to hold the necklace. Zimmerman further reported that Kirkman began "speaking some sort of unintelligible language[,] his eyes were dilated," and he prevented her from leaving the room. Zimmerman feared for her safety and the safety of others, and immediately filed an Affidavit and Petition for Involuntary Commitment regarding Kirkman. At 9:11 a.m. on the morning of 13 February 2016, a Rowan County magistrate issued a custody order for the involuntary commitment of Kirkman on the basis that Kirkman was likely "mentally ill and dangerous to self or others or mentally ill and in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness."

On the same morning, plaintiff and Kirkman went to defendant hospital's emergency room, where Kirkman was admitted to the emergency department.

Kirkman was examined by Dr. Maria Saffell, an emergency medicine physician who was an independent contractor and not an employee of defendant hospital or Novant Health. Saffell reviewed the involuntary commitment paperwork; performed a physical examination of Kirkman; ordered lab work, medications—including Ativan, a medicine used to treat anxiety—and IV fluids; and medically cleared Kirkman for a psychiatric evaluation.

The mental health assessments at RRMC occurred as telehealth assessments from Forsyth Medical Center Behavioral Health Outpatient Center (Forsyth Medical Center). Mindy France, a licensed professional counselor, performed Kirkman's telemedicine behavioral health assessment. France's examination of Kirkman included, *inter alia*, questions regarding his sleep, appetite, and moods; his potential risk to self and others; if he had any history of substance abuse; as well as his thought content, mental status, and legal issues. Kirkman reported no history of self-harm or suicide and no thoughts of hurting others but did admit to stress and lack of sleep as a result of his upcoming final exams. In response to France's inquiries regarding anxiety, hopelessness, hallucinations, or being socially withdrawn, Kirkman further denied experiencing any such emotions. Plaintiff was in the room with her husband throughout France's assessment and agreed with Kirkman's answers to the questions posed by France. However, when France inquired whether Kirkman had any firearms in the home, he answered in the negative, although he and plaintiff—who did not amend or correct her husband's denial of owning any guns—were both aware that

Kirkman had access to a number of hunting rifles, shotguns, and handguns in their home.

Upon her evaluation of Kirkman, France determined, based on the information available to her at the time, that "there was no indication that he was a current threat to anybody or himself[,]" concluded that Kirkman was suffering from anxiety, and reported these opinions to Saffell. Kirkman had remained calm and compliant throughout his examinations by Saffell and by France, and during the majority of the period in which he was a patient in the emergency department of RRMC. Based on her own observations of Kirkman, her review of the results of his medical examination, and France's telemedicine behavioral health assessment, Saffell diagnosed Kirkman with behavioral outburst and determined that he was not mentally ill or mentally retarded and that he was not a danger to himself or to others. At 3:40 a.m. on 14 February 2016, Kirkman was discharged from RRMC by Saffell. He was immediately taken into custody by the Rowan County Sheriff's Office and at 4:20 a.m., Kirkman was released on bond.

On 15 February 2016, Kirkman appeared in court in connection with the incident involving Zimmerman. He waived his right to the assistance of appointed counsel and after his first appearance, he and plaintiff met with an attorney. Later in the day on 15 February 2016, after refusing to be voluntarily admitted to a behavioral health facility, Kirkman assaulted plaintiff, breaking her nose and hand and causing her to require stitches in her mouth. Plaintiff gave a statement to law

enforcement officers at the hospital, and upon her release, plaintiff and her son moved out of the family home.

On 16 February 2016, plaintiff executed involuntary commitment papers against Kirkman which were subsequently denied by the court. Later that day, Kirkman died from a self-inflicted gunshot wound.

On 15 February 2018, plaintiff filed a complaint against RRMC, Saffell, France, and other entities, alleging that during Kirkman's 13–14 February 2016 admission to defendant hospital's emergency department, "each [d]efendant . . . was negligent and deviated from the applicable standard of care . . . and thereby caused, directly, proximately, and in fact, the injury(ies), condition(s) of ill-being to Chad Wayne Kirkman[, and] the death of Chad Wayne Kirkman . . . ." Plaintiff subsequently voluntarily dismissed all defendants aside from RRMC and France, each of whom moved for summary judgment on 26 August 2022.

On 7 November 2022, the trial court entered an order granting summary judgment to defendants on the grounds that defendants were entitled to qualified immunity in accordance with N.C. Gen. Stat. § 122C-210.1 and, alternatively, that plaintiff had presented no forecast of evidence in support of the existence of the essential element of proximate cause. The trial court entered an additional order on 7 November 2022 denying plaintiff's motion to amend her complaint to add claims of gross negligence. Plaintiff timely appealed from the orders of the trial court.

## II.    Analysis

Plaintiff argues that the trial court erred in entering summary judgment for defendants pursuant to the immunity provided under N.C. Gen. Stat. § 122C-210.1 and abused its discretion in denying plaintiff's motion for leave to amend the complaint to add an allegation of gross negligence. We reject both contentions.

**A. Summary judgment**

Plaintiff presents a number of inter-related and overlapping contentions in support of her argument that the grant of summary judgment in favor of defendants was improper: that N.C. Gen. Stat. § 122C-210.1 does not apply to medical malpractice actions; that even if the statute did apply to such actions, France "violated accepted professional standards, thereby precluding immunity under the statute"; that a showing of gross negligence is not required to place a defendant outside the immunity from liability provided under the statute; and that, in any event, plaintiff established gross negligence by France and was not required to allege gross negligence "before [d]efendants raised their affirmative defense under the statute."

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). Moreover, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C.

375, 378, 218 S.E.2d 379, 381 (1975) (internal quotation marks omitted). The standard of review for summary judgment is de novo. *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

*Forbis v. Neal*, 361 N.C. 519, 523–24, 649 S.E.2d 382, 385 (2007). A defendant may show entitlement to summary judgment in its favor "by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense." *Wilkins v. Safran*, 185 N.C. App. 668, 671, 649 S.E.2d 658, 661 (2007) (quoting *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal quotation marks omitted), *aff'd*, 358 N.C. 131, 591 S.E.2d 521 (2004)).

At the time plaintiff filed her complaint, the portion of Chapter 122C, the "Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985" titled "Immunity from liability" provided:

> *No facility or any of its officials, staff, or employees, or any physician or other individual who is responsible for the custody, examination, management, supervision, treatment, or release of a client and who follows accepted professional judgment, practice, and standards is civilly liable, personally or otherwise, for actions arising from these responsibilities or for actions of the client.* This immunity is in addition to any other legal immunity from liability to which these facilities or individuals may be entitled and applies to actions performed in connection with, or arising out of, the admission or commitment of any individual pursuant to this Article.

N.C. Gen. Stat. § 122C-210.1 (2017)[1] (emphases added).

Before this Court, plaintiff relies primarily on this Court's decision in *Alt v. Parker*, 112 N.C. App. 307, 435 S.E.2d 773 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994), to support her summary judgment arguments. According to plaintiff, *Alt* stands for the proposition "that a defendant is entitled to immunity under N.C.G.S. § 122C-210.1 if the challenged act or omission was a professionally acceptable choice." Plaintiff argues that this language from *Alt* stands for the proposition that the version of N.C. Gen. Stat. § 122C-210.1 applicable in this case only provided immunity from liability to covered health care providers whose acts or omissions conformed to the relevant standard of practice as discussed under the general medical malpractice statute, N.C. Gen. Stat. § 90-21.12(a).[2] In other words, plaintiff appears to assert that N.C. Gen. Stat. § 122C-210.1 only provides immunity for claims other than medical malpractice or where a claim for medical malpractice

---

[1] The statute was amended effective 1 October 2019.

[2] This subsection provides that in medical malpractice actions, health care providers are not liable for damages unless the plaintiff persuades the fact finder that the defendant provider's care "was not in accordance with the standards of practice among members of the same health care profession . . . ." N.C. Gen. Stat. § 90-21.12(a) (2021). This standard is understood to require a plaintiff to establish ordinary negligence to prevail in a medical malpractice case. *See, e.g.*, *Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985) ("In a medical malpractice case, the plaintiff must prove that defendant was negligent in his care of plaintiff and that such negligence was the proximate cause of plaintiff's injuries and damage. . . . The defendant physician's negligence must be established by showing the standard of care owed to plaintiff and that defendant violated that standard of care.") (citation and internal quotation marks omitted).

would already fail based upon a plaintiff's failure to establish negligence under the standard of care set forth in N.C. Gen. Stat. § 90-21.12(a).

Our review of the decision in *Alt* indicates that the case sheds no light on the statute's applicability in medical malpractice cases, rendering it inapposite to the matter at bar. In *Alt*, the plaintiff's appellate arguments were "that the trial court erroneously entered summary judgment on . . . three . . . claims, malicious prosecution, false imprisonment, and deprivation of due process," but the plaintiff had not asserted any claim for medical malpractice. *Alt*, 112 N.C. App. at 310, 435 S.E.2d at 774. Plaintiff's citation to *Alt* comes from the portion of that decision resolving the plaintiff's argument that the trial court had wrongly granted summary judgment in favor of the defendant psychiatrist on the plaintiff's false imprisonment claim. *Id.* at 313, 435 S.E.2d at 776. The Court first held that because "[t]he essence of the tort of false imprisonment is illegal restraint of a person against his will," the plaintiff in *Alt* could not prevail given that he was lawfully restrained, citing *Youngberg v. Romeo*, 457 U.S. 307 (1982) for the proposition that "[a] client in a state institution is not entitled to absolute freedom from restraint; rather, the client's freedom from restraint must be balanced against the safety of other clients and the client himself." *Id.* at 313, 435 S.E.2d at 776–77 (additional citation omitted).

Then the Court quoted N.C. Gen. Stat. § 122C-210.1 and discussed *Youngberg*'s holding as to what Fourteenth Amendment liberty interests a client in a state hospital retained, before noting:

- 9 -

> Since we are today concerned with the provisions of the North Carolina Constitution, the U.S. Supreme Court's opinion has no direct precedential weight. Nonetheless, we believe that its reasoning is sound and coincides with our reading of N.C.G.S. § 122C-210.1, and we adopt the standard enunciated in *Youngberg*. *Thus, in this case, so long as the requisite procedures were followed and the decision to restrain the plaintiff was an exercise of professional judgment, the defendants are not liable to the plaintiff for their actions.* Plaintiff alleges both that [the defendant] failed to follow the established procedures and that he did not exercise his professional judgment in deciding to restrain plaintiff.

*Id.* at 313–14, 435 S.E.2d at 777 (emphasis added). Because here, unlike in *Alt*, plaintiff's claims sound in tort and do not implicate any constitutional issue, whether state or federal, we find the above-quoted language from *Alt* inapplicable to plaintiff's case.

Instead, we look to the precedent established by other decisions issued by this Court which do address the impact of N.C. Gen. Stat. § 122C-210.1 in the context of medical malpractice or negligence. For example, this Court has held, in applying the pertinent version of the statute in a medical malpractice case, that "[q]ualified immunity, if applicable, is sufficient to grant a defendant's motion for summary judgment," and moreover, in the specific context of N.C. Gen. Stat. § 122C-210.1, that "*gross negligence must be alleged to overcome the statutory immunity once it attaches.*" *Boryla-Lett v. Psychiatric Sols. of N.C., Inc.*, 200 N.C. App. 529, 533, 685 S.E.2d 14, 18 (2009) (emphasis added). That decision, in turn relies in great part on *Snyder v. Learning Servs. Corp.*, a negligence case in which this Court held that

> [u]nder North Carolina law, "[c]laims based on ordinary negligence do not overcome . . . statutory immunity" pursuant to Section 122C-210.1; a plaintiff must allege gross or intentional negligence. *Cantrell v. United States*, 735 F. Supp. 670, 673 (E.D.N.C. 1988); s*ee also Pangburn v. Saad*, 73 N.C. App. 336, 347, 326 S.E.2d 365, 372 (1985) ("We therefore conclude that G.S. Sec. 122-24 [the precursor to N.C. Gen. Stat. § 122C-210.1] was intended to create a qualified immunity for those state employees it protects, extending only to their ordinary negligent acts. It does not, however, protect a tortfeasor from personal liability for gross negligence and intentional torts.").

187 N.C. App. 480, 484, 653 S.E.2d 548, 551 (2007). We conclude that the precedent established by *Boryla-Lett* and *Snyder*—each of which addresses a negligence claim and the latter of which involves medical malpractice particularly—constitute controlling authority by which we are bound in deciding this appeal. Those decisions make plain that a plaintiff in a malpractice case must allege *gross* negligence by a covered defendant in order to overcome the immunity from liability established by the legislature in N.C. Gen. Stat. § 122C-210.1. Plaintiff here failed to include such an allegation in her complaint. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of defendants here.[3]

---

[3] While the absence from plaintiff's complaint of an allegation of gross negligence as required by the statutory immunity provision just discussed fully supports the trial court's summary judgment ruling here, we observe that, even under ordinary negligence precedent, defendants would have been entitled to summary judgment on plaintiff's claims in light of the forecast of evidence regarding proximate cause. *See, e.g.*, *Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC*, 240 N.C. App. 337, 346, 770 S.E.2d 159, 165 (2015) ("Proximate causation is a cause which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all of the facts then existing.") (internal quotation marks and citation omitted). Each of plaintiff's four expert witnesses

## B. Motion for leave to amend

Plaintiff next argues that the trial court abused its discretion in denying her motion for leave to amend her complaint to add an allegation of gross negligence. We disagree.

> According to well-established North Carolina law, after the time for answering a pleading has expired, a motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse. A trial court abuses its discretion in the event that its decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.

*Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 603, 821 S.E.2d 711, 727–28 (2018) (citations and quotation marks omitted).

A "delay in seeking to amend a pleading, and particularly where it causes prejudice to a party, can justify a decision to deny the amendment." *Chappell v. N.C. DOT*, 374 N.C. 273, 280, 841 S.E.2d 513, 519 (2020) (citing *News & Observer Pub. Co. v. Poole*, 330 N.C. 465, 485, 412 S.E.2d 7, 19 (1992) ("Among proper reasons for

---

testified that a physician, here Saffell, rather than an LPC, here France, makes the decision regarding whether the patient should be involuntarily committed or discharged. Indeed, the Licensed Professional Counselors Act does not permit an LPC to admit, discharge, or involuntarily commit a patient. N.C. Gen. Stat. § 90-330(3) (2021). Saffell herself agreed that the decision to discharge Kirkman was hers and not France's, a fact further demonstrated by the discharge paperwork. Moreover, given the professional care exercised by Saffell here—including observing Kirkman for more than ten hours, inquiring directly of the patient about any suicidal or homicidal ideations he might have experienced, consulting with plaintiff as Kirkman's wife, and reviewing France's notes on her evaluation—Kirkman's suicide was not reasonably foreseeable and no different assessment by either Saffell or France could have been expected to have prevented Kirkman's suicide two days later. *See Williamson v. Liptzin*, 141 N.C. App. 1, 10–12, 539 S.E.2d 313, 319–20 (2000). Thus, even were we to review the trial court's summary judgment ruling in light of ordinary negligence principles, the result here would be the same.

denying a motion to amend are undue delay by the moving party and unfair prejudice to the non-moving party.")). The trial court here noted both bases for its denial of plaintiff's motion for leave to amend.

We see no abuse of discretion by the trial court in denying plaintiff's motion given that defendants raised the defense of N.C. Gen. Stat. § 122C-210.1 immunity in their answer on 23 April 2018, while plaintiff did not seek to amend her complaint to allege gross negligence until 3 October 2022, four and one-half years after defendants' answer and only three weeks prior to trial. Given the undue delay in plaintiff's decision to move for leave to amend, in conjunction with apparent prejudice to defendants, arising from the fact that discovery in the matter had concluded at the time of plaintiff's motion, we hold that the trial court was justified in denying plaintiff's motion and did not act arbitrarily without reason in so doing. *See id.* Plaintiff's argument to the contrary is therefore overruled.

## III.  Conclusion

Plaintiff has not shown any error or abuse of discretion by the trial court in connection to either of the lower court's decisions as challenged on appeal. Accordingly, the trial court's orders denying plaintiff's motion for leave to amend and for summary judgment in favor of defendants are affirmed.

AFFIRMED.

Judges COLLINS and GRIFFIN concur.